UNITED STATES *v.* HARRIS

No. 30.   Argued March 23, 1971—Decided June 28, 1971

BURGER, C. J., announced the Court's judgment and delivered an opinion, in which BLACK and BLACKMUN, JJ., joined, and in Part I of which STEWART, J., and in Part III of which WHITE, J., joined. BLACK, J., filed a concurring statement, *post*, p. 585. BLACKMUN, J., filed a concurring opinion, *post*, p. 585. HARLAN, J., filed a dissenting opinion, in which DOUGLAS, BRENNAN, and MARSHALL, JJ., joined, *post*, p. 586.

*Beatrice Rosenberg* argued the cause for the United States. With her on the brief were *Solicitor General Griswold, Assistant Attorney General Wilson, Richard B. Stone,* and *Mervyn Hamburg.*

*Steven M. Umin,* by appointment of the Court, 400 U. S. 955, argued the cause and filed a brief for respondent.

*Frank G. Carrington, Jr.,* and *Alan S. Ganz* filed a brief for Americans for Effective Law Enforcement, Inc., as *amicus curiae* urging reversal.

MR. CHIEF JUSTICE BURGER announced the judgment of the Court and an opinion in which MR. JUSTICE BLACK and MR. JUSTICE BLACKMUN join, and in Part I of which

, MR. JUSTICE STEWART joins, and in Part III of which MR. JUSTICE WHITE joins.

We granted certiorari in this case to consider the recurring question of what showing is constitutionally necessary to satisfy a magistrate that there is a substantial basis for crediting the report of an informant known to the police, but not identified to the magistrate, who purports to relate his personal knowledge of criminal activity.

In 1967 a federal tax investigator and a local constable entered the premises of respondent Harris, pursuant to a search warrant issued by a federal magistrate, and seized jugs of whiskey upon which the federal tax had not been paid. The warrant had been issued solely on the basis of the investigator's affidavit, which recited the following:

> "Roosevelt Harris has had a reputation with me for over 4 years as being a trafficker of nontaxpaid distilled spirits, and over this period I have received numerous information [sic] from all types of persons as to his activities. Constable Howard Johnson located a sizeable stash of illicit whiskey in an abandoned house under Harris' control during this period of time. This date, I have received information from a person who fears for their [sic] life and property should their name be revealed. I have interviewed this person, found this person to be a prudent person, and have, under a sworn verbal statement, gained the following information: This person has personal knowledge of and has purchased illicit whiskey from within the residence described, for a period of more than 2 years, and most recently within the past 2 weeks, has knowledge of a person who purchased illicit whiskey within the past two days from the house, has personal knowledge that the illicit whiskey is consumed by purchasers in the outbuilding known as and utilized as

the 'dance hall,' and has seen Roosevelt Harris go to the other outbuilding, located about 50 yards from the residence, on numerous occasions, to obtain the whiskey for this person and other persons."

Respondent was subsequently charged with possession of nontaxpaid liquor, in violation of 26 U. S. C. § 5205 (a)(2). His pretrial motion to suppress the seized evidence on the ground that the affidavit was insufficient to establish probable cause was overruled, and he was convicted after a jury trial and sentenced to two years' imprisonment. The Court of Appeals for the Sixth Circuit reversed the conviction, holding that the information in the affidavit was insufficient to enable the magistrate to assess the informant's reliability and trustworthiness. 412 F. 2d 796, 797 (1969).

The Court of Appeals relied on Aguilar v. Texas, 378 U. S. 108 (1964), in which we held that an affidavit based solely on the hearsay report of an unidentified informant must set forth "some of the underlying circumstances from which the officer concluded that the informant . . . was 'credible' or his information 'reliable.'" Id., at 114. It concluded that the affidavit was insufficient because no information was presented to enable the magistrate to evaluate the informant's reliability or trustworthiness. The court noted the absence of any allegation that the informant was a "truthful" person, but only an allegation that the informant was "prudent." Having found the informant's tip inadequate under Aguilar, the Court of Appeals, relying on Spinelli v. United States, 393 U. S. 410 (1969), looked to the remaining allegations of the affidavit to determine whether they provided independent corroboration of the informant. The Court of Appeals held that the constable's prior discovery of a cache on respondent's property within the previous four years was too remote, and,

citing certain language from *Spinelli,* it gave no weight whatever to the assertion that respondent had a general reputation known to the officer as a trafficker in illegal whiskey.

For the reasons stated below, we reverse the judgment of the Court of Appeals and reinstate the judgment of conviction.

I

In evaluating the showing of probable cause necessary to support a search warrant, against the Fourth Amendment's prohibition of unreasonable searches and seizures, we would do well to heed the sound admonition of *United States* v. *Ventresca,* 380 U. S. 102 (1965):

"[T]he Fourth Amendment's commands, like all constitutional requirements, are practical and not abstract. If the teachings of the Court's cases are to be followed and the constitutional policy served, affidavits for search warrants, such as the one involved here, must be tested and interpreted by magistrates and courts in a commonsense and realistic fashion. They are normally drafted by nonlawyers in the midst and haste of a criminal investigation. Technical requirements of elaborate specificity once exacted under common law pleadings have no proper place in this area. A grudging or negative attitude by reviewing courts toward warrants will tend to discourage police officers from submitting their evidence to a judicial officer before acting." 380 U. S., at 108.

*Aguilar* in no way departed from these sound principles. There a warrant was issued on nothing more than an affidavit reciting:

"Affiants have received reliable information from a credible person and do believe that heroin, mari-

juana, barbiturates and other narcotics and narcotic paraphernalia are being kept at the above described premises for the purpose of sale and use contrary to the provisions of the law." 378 U. S., at 109.

The affidavit, therefore, contained none of the underlying "facts or circumstances" from which the magistrate could find probable cause. *Nathanson* v. *United States*, 290 U. S. 41, 47 (1933). On the contrary, the affidavit was a "mere affirmation of suspicion and belief" (*Nathanson, supra,* at 46) and gained nothing by the incorporation by reference of the informant's unsupported belief. See *Aguilar, supra,* at 114 n. 4.

Significantly, the Court in *Aguilar* cited with approval the affidavit upheld in *Jones* v. *United States,* 362 U. S. 257 (1960). That affidavit read in pertinent part as follows:

"In the late afternoon of Tuesday, August 20, 1957, I, Detective Thomas Didone, Jr. received information that Cecil Jones and Earline Richardson were involved in the illicit narcotic traffic and that they kept a ready supply of heroin on hand in the above mentioned apartment. The source of information also relates that the two aforementioned persons kept these same narcotics either on their person, under a pillow, on a dresser or on a window ledge in said apartment. The source of information goes on to relate that on many occasions the source of information has gone to said apartment and purchased narcotic drugs from the above mentioned persons and that the narcotics were secreated [*sic*] in the above mentioned places. The last time being August 20, 1957." *Id.,* at 267–268, n. 2.

The substance of the tip, held sufficient in *Jones,* closely parallels that here held insufficient by the Court

of Appeals. Both recount personal and recent* observations by an unidentified informant of criminal activity, factors showing that the information had been gained in a reliable manner, and serving to distinguish both tips from that held insufficient in *Spinelli, supra,* in which the affidavit failed to explain how the informant came by his information. *Spinelli, supra,* at 416.

The Court of Appeals seems to have believed, however, that there was no substantial basis for believing that the tip was truthful. Indeed, it emphasized that the affiant had never alleged that the informant was truthful, but only "prudent," a word that "signifies that he is circumspect in the conduct of his affairs, but reveals nothing about his credibility." 412 F. 2d, at 797–798. Such a construction of the affidavit is the very sort of hypertechnicality—the "elaborate specificity once exacted under common law"—condemned by this Court in *Ventresca.* A policeman's affidavit "should not be judged as an entry in an essay contest," *Spinelli, supra,* at 438 (Fortas, J., dissenting), but, rather, must be judged by the facts it contains. While a bare statement by an affiant that he believed the informant to be truthful would not, in itself, provide a *factual* basis for crediting the report of an unnamed informant, we conclude that the affidavit in the present case contains an ample factual basis for believing the informant which, when coupled

---

*We reject the contention of respondent that the informant's observations were too stale to establish probable cause at the time the warrant was issued. The informant reported having purchased whiskey from respondent "within the past 2 weeks," which could well include purchases up to the date of the affidavit. Moreover, these recent purchases were part of a history of purchases over a two-year period. It was certainly reasonable for a magistrate, concerned only with a balancing of probabilities, to conclude that there was a reasonable basis for a search.

with affiant's own knowledge of the respondent's background, afforded a basis upon which a magistrate could reasonably issue a warrant. The accusation by the informant was plainly a declaration against interest since it could readily warrant a prosecution and could sustain a conviction against the informant himself. This will be developed in Part III.

## II

In determining what quantum of information is necessary to support a belief that an unidentified informant's information is truthful, *Jones v. United States, supra,* is a suitable benchmark. The affidavit in *Jones* recounted the tip of an anonymous informant, who claimed to have recently purchased narcotics from the defendant at his apartment, and described the apartment in some detail. After reciting the substance of the tip the affiant swore as follows:

> "Both the aforementioned persons are familiar to the undersigned and other members of the Narcotic Squad. Both have admitted to the use of narcotic drugs and display needle marks as evidence of same.
>
> "This same information, regarding the illicit narcotic traffic, conducted by [the defendant] has been given to the undersigned and to other officers of the narcotic squad by other sources of information.
>
> "Because the source of information mentioned in the opening paragraph has given information to the undersigned on previous occasion and which was correct, and because this same information is given by other sources does believe that there is now illicit narcotic drugs being secreated [*sic*] in the above apartment . . . ." *Id.,* at 268 n. 2.

Mr. Justice Frankfurter, writing for the Court in *Jones,* upheld the warrant. Although the information in the affidavit was almost entirely hearsay, he concluded that

there was "substantial basis" for crediting the hearsay. The informant had previously given accurate information; his story was corroborated by "other sources" (albeit unnamed); additionally the defendant was known to the police as a user of narcotics. Justice Frankfurter emphasized the last two of these factors:

> "Corroboration through other sources of information reduced the chances of a reckless or prevaricating tale; that petitioner was a known user of narcotics made the charge against him much less subject to scepticism than would be such a charge against one without such a history." *Id.*, at 271.

*Aguilar* cannot be read as questioning the "substantial basis" approach of *Jones*. And unless *Jones* has somehow, without acknowledgment, been overruled by *Spinelli*, there would be no basis whatever for a holding that the affidavit in the present case is wanting. The affidavit in the present case, like that in *Jones*, contained a substantial basis for crediting the hearsay. Both affidavits purport to relate the personal observations of the informant—a factor that clearly distinguishes *Spinelli*, in which the affidavit failed to explain how the informant came by his information. Both recite prior events within the affiant's own knowledge—the needle marks in *Jones* and Constable Johnson's prior seizure in the present case—indicating that the defendant had previously trafficked in contraband. These prior events again distinguish *Spinelli*, in which no facts were supplied to support the assertion that Spinelli was "known . . . as a bookmaker, an associate of bookmakers, a gambler, and an associate of gamblers." *Spinelli, supra,* at 422.

To be sure there is no averment in the present affidavit, as there was in *Jones*, that the informant had previously given "correct information," but this Court in *Jones* never suggested that an averment of previous reliability was

necessary. Indeed, when the inquiry is, as it always must be in determining probable cause, whether the informant's *present* information is truthful or reliable, it is curious, at the very least, that MR. JUSTICE HARLAN would place such stress on vague attributes of "general background, employment . . . position in the community . . . ." (*Post,* at 600.) Were it not for some language in *Spinelli,* it is doubtful that any of these reputation attributes of the informant could be said to reveal any more about his present reliability than is afforded by the support of the officer's personal knowledge of the suspect. In *Spinelli,* however, the Court rejected as entitled to no weight the "bald and unilluminating" assertion that the suspect was known to the affiant as a gambler. 393 U. S., at 414. For this proposition the Court relied on *Nathanson* v. *United States,* 290 U. S. 41 (1933). But a careful examination of *Nathanson* shows that the *Spinelli* opinion did not fully reflect the critical points of what *Nathanson* held since it was limited to holding that reputation, *standing alone,* was insufficient; it surely did not hold it irrelevant when supported by other information. This reading of *Nathanson* is confirmed by *Brinegar* v. *United States,* 338 U. S. 160 (1949), in which the Court, in sustaining a finding of probable cause for a warrantless arrest, held proper the assertion of the searching officer that he had previously arrested the defendant for a similar offense and that the defendant had a reputation for hauling liquor. Such evidence would rarely be admissible at trial, but the Court took pains to emphasize the very different functions of criminal trials and preliminary determinations of probable cause. Trials are necessarily surrounded with evidentiary rules "developed to safeguard men from dubious and unjust convictions." *Id.,* at 174. But before the trial we deal only with probabilities that "are not technical; they are the factual and practical considerations of

everyday life on which reasonable and prudent men, not legal technicians, act." *Brinegar, supra,* at 175.

We cannot conclude that a policeman's knowledge of a suspect's reputation—something that policemen frequently know and a factor that impressed such a "legal technician" as Mr. Justice Frankfurter—is not a "practical consideration of everyday life" upon which an officer (or a magistrate) may properly rely in assessing the reliability of an informant's tip. To the extent that *Spinelli* prohibits the use of such probative information, it has no support in our prior cases, logic, or experience and we decline to apply it to preclude a magistrate from relying on a law enforcement officer's knowledge of a suspect's reputation.

### III

Quite apart from the affiant's own knowledge of respondent's activities, there was an additional reason for crediting the informant's tip. Here the warrant's affidavit recited extrajudicial statements of a declarant, who feared for his life and safety if his identity was revealed, that over the past two years he had many times and recently purchased "illicit whiskey." These statements were against the informant's penal interest, for he thereby admitted major elements of an offense under the Internal Revenue Code. Section 5205 (a)(2), Title 26, United States Code, proscribes the sale, purchase, or possession of unstamped liquor.

Common sense in the important daily affairs of life would induce a prudent and disinterested observer to credit these statements. People do not lightly admit a crime and place critical evidence in the hands of the police in the form of their own admissions. Admissions of crime, like admissions against proprietary interests, carry their own indicia of credibility—sufficient at least to support a finding of probable cause to search. That the informant may be paid or promised a "break" does

not eliminate the residual risk and opprobrium of having admitted criminal conduct. Concededly admissions of crime do not always lend credibility to contemporaneous or later accusations of another. But here the informant's admission that over a long period and currently he had been buying illicit liquor on certain premises, itself and without more, implicated that property and furnished probable cause to search.

It may be that this informant's out-of-court declarations would not be admissible at respondent's trial under *Donnelly* v. *United States,* 228 U. S. 243 (1913), or under *Bruton* v. *United States,* 391 U. S. 123 (1968). But *Donnelly*'s implication that statements against penal interest are without value and *per se* inadmissible has been widely criticized; see the dissenting opinion of Mr. Justice Holmes in *Donnelly, supra,* at 277; 5 J. Wigmore, Evidence § 1477 (3d ed. 1940), and has been partially rejected in Rule 804 of the Proposed Rules of Evidence for the District Courts and Magistrates. More important, the issue in warrant proceedings is not guilt beyond reasonable doubt but probable cause for believing the occurrence of a crime and the secreting of evidence in specific premises. See *Brinegar* v. *United States, supra,* at 173. Whether or not *Donnelly* is to survive as a rule of evidence in federal trials, it should not be extended to warrant proceedings to prevent magistrates from crediting, in all circumstances, statements of a declarant containing admissions of criminal conduct. As for *Bruton,* that case rested on the Confrontation Clause of the Sixth Amendment which seems inapposite to *ex parte* search warrant proceedings under the Fourth Amendment.

It will not do to say that warrants may not issue on uncorroborated hearsay. This only avoids the issue of whether there is reason for crediting the out-of-court statement. Nor is it especially significant that neither

the name nor the person of the informant was produced before the magistrate. The police themselves almost certainly knew his name, the truth of the affidavit is not in issue, and *McCray* v. *Illinois,* 386 U. S. 300 (1967), disposed of the claim that the informant must be produced whenever the defendant so demands.

*Reversed.*

MR. JUSTICE STEWART joins in Part I of THE CHIEF JUSTICE's opinion and in the judgment of the Court.

MR. JUSTICE WHITE agrees with Part III of THE CHIEF JUSTICE's opinion and has concluded that the affidavit, considered as a whole, was sufficient to support issuance of the warrant. He therefore concurs in the judgment of reversal.

MR. JUSTICE BLACK, concurring.

While I join the opinion of THE CHIEF JUSTICE which distinguishes this case from *Aguilar* v. *Texas,* 378 U. S. 108 (1964), and *Spinelli* v. *United States,* 393 U. S. 410 (1969), I would go further and overrule those two cases and wipe their holdings from the books for the reasons, among others, set forth in the dissent of Mr. Justice Clark in *Aguilar,* which I joined, and my dissent in *Spinelli.*

MR. JUSTICE BLACKMUN, concurring.

I join the opinion of THE CHIEF JUSTICE and the judgment of the Court, but I add a personal comment in order to make very clear my posture as to *Spinelli* v. *United States,* 393 U. S. 410 (1969), cited in several places in that opinion. I was a member of the 6–2 majority of the United States Court of Appeals for the Eighth Circuit in *Spinelli* v. *United States,* 382 F. 2d 871 (1967), which this Court by a 5–3 vote reversed, with the pivotal Justice concluding his con-

curring opinion, 393 U. S., at 429, by the observation that, "Pending full-scale reconsideration of that case [*Draper* v. *United States*, 358 U. S. 307 (1959)], on the one hand, or of the *Nathanson-Aguilar* cases on the other, I join the opinion of the Court and the judgment of reversal, especially since a vote to affirm would produce an evenly divided Court." Obviously, I then felt that the Court of Appeals had correctly decided the case. Nothing this Court said in *Spinelli* convinced me to the contrary. I continue to feel today that *Spinelli* at this level was wrongly decided and, like MR. JUSTICE BLACK, I would overrule it.

MR. JUSTICE HARLAN, with whom MR. JUSTICE DOUGLAS, MR. JUSTICE BRENNAN, and MR. JUSTICE MARSHALL join, dissenting.

This case presents the question of how our decisions in *Aguilar* v. *Texas*, 378 U. S. 108 (1964), and *Spinelli* v. *United States*, 393 U. S. 410 (1969), apply where magistrates in issuing search warrants are faced with the task of assessing the probable credibility of unidentified informants who purport to describe criminal activity of which they have personal knowledge, and where it does not appear that such informants have previously supplied accurate information to law enforcement officers.

I cannot agree that the affidavit here at issue provided a sufficient basis for an independent determination, by a neutral judicial officer, that probable cause existed. Accordingly, I would affirm the judgment of the Court of Appeals. Five members of this Court, however, for four separately expressed reasons, have concluded that the judgment below must be reversed. Some of the theories employed by those voting to reverse are wholly unlike any of the grounds urged by the Government.

# I

Where, as in this case, the affiant states under oath that he has been informed of the existence of certain criminal activity, but has not observed that activity himself, a magistrate in discharging his duty to make an independent assessment of probable cause can properly issue a search warrant only if he concludes that: (a) the knowledge attributed to the informant, if true, would be sufficient to establish probable cause; (b) the affiant is likely relating truthfully what the informer said; and (c) it is reasonably likely that the informer's description of criminal behavior accurately reflects reality.[1]

In the case before us, no one maintains that the magistrate's judgment as to elements (a) and (b) was not properly supported. Plainly the information set forth in the affidavit, if entitled to credit, establishes probable cause. And the magistrate was certainly entitled to rely on the agent's official status, his personal observation of the agent, and the oath administered to him by the magistrate in concluding that the affiant's assertions as to what he had been told by the informer were credible.

The final component of the probable cause equation, here involved, is that it must appear reasonably likely that the informer's claim that criminal conduct has occurred or is occurring is probably accurate. Our

---

[1] Of course where, as here, the affiant provides information in addition to the informant's tip, the magistrate could alternatively find probable cause, without examining the tip, if he can conclude that (a) the affiant is probably telling the truth and (b) the affidavit apart from the tip is sufficiently informative to establish probable cause. See *Spinelli* v. *United States*, 393 U. S. 410, 414 (1969). Concededly, this latter element is not present here. Government's Brief 16. Without crediting the tip, the affidavit is insufficient.

cases establish that this element is satisfied only if there is reason to believe both that the informer is a truthful person generally and that he has based his particular conclusions in the matter at hand on reliable data, *Aguilar* v. *Texas, supra; Spinelli* v. *United States, supra,* for it is not reasonable to invade another's premises on the basis of information, even if it appears quite damning when simply taken at face value, unless there is corroboration of its trustworthiness. The fact that the magistrate has determined that the agent probably truthfully reported what the informant conveyed cannot, of course, establish the credibility or reliability of the information itself. More immediately relevant here, our cases have established that where the affiant relies upon the assertions of confidants to establish probable cause, the affidavit must set forth facts which enable the magistrate to judge for himself both the probable credibility of the informant and the reliability of his information, for only if this condition is met can a reviewing court be satisfied that the magistrate has fulfilled his constitutional duty to render an independent determination that probable cause exists. *Aguilar* v. *Texas,* 378 U. S. 108 (1964); *Spinelli* v. *United States,* 393 U. S. 410 (1969). Cf. *Giordenello* v. *United States,* 357 U. S. 480 (1958); *Nathanson* v. *United States,* 290 U. S. 41 (1933); *Whiteley* v. *Warden,* 401 U. S. 560 (1971).[2]

The parties are in agreement with these principles and have not urged that they be re-examined. Indeed, I think these precepts follow ineluctably from the constitutional command that "no Warrants shall issue, but upon probable cause." Whether, in this case, either of

---

[2] *Giordenello* and *Whiteley* each involved an arrest warrant rather than a search warrant, but the analysis required to determine the validity of either is basically the same.

these tests of the trustworthiness of the informer's tip has been met is, however, vigorously disputed.

## II

Although the Court of Appeals did not address itself to this contention, respondent claims that the affidavit is insufficient to establish the reliability of the evidence upon which the informant based his conclusions. Of course, most of these data come from alleged direct personal observation of the informant, surely a sufficient basis upon which to predicate a finding of reliability under any test. However, respondent stresses that the allegation of direct observation of the criminal activity does not necessarily purport to embrace a period less than two weeks prior to the issuance of the search warrant. Moreover, the reliability of the source of the information that a purchase was made "within the past two days" is not established and, it is argued, the other information was too stale to support the issuance of a warrant.

This argument is premised upon an overly technical view of the affidavit. The informant is said to have personally bought illegal whiskey from respondent "within the past 2 weeks," which could well include a point in time quite close to the issuance of the warrant. More importantly, the totality of the tip evidently reveals that the informer purported to describe an ongoing operation which he claimed he had personally observed over the course of two years. Giving due deference to the magistrate's determination of probable cause and reading the affidavit "in a commonsense and realistic fashion," *United States* v. *Ventresca*, 380 U. S. 102, 108 (1965), I must conclude that the affidavit sets forth sufficient data to permit a magistrate to determine that, if the informer was likely telling the truth, information adequate to support a finding of probable cause was likely obtained in a reliable fashion.

## III

I turn, then, to what the parties have treated as the crux of the controversy before us. Respondent contends, and the Court of Appeals so held, that the affidavit does not sufficiently set forth facts and circumstances from which the magistrate might properly have concluded that the informant, in purporting to detail his personal observation, was probably telling the truth. Conversely, the Government principally argues that two factors, singly or in combination, provided a factual basis for the magistrate's judgment that the tip was credible. First, the agent stated that he had "interviewed this person [and] found this person to be a prudent person." Second, the informant described the criminal activity in some detail and from his own personal knowledge.[3]

### A

The Government's first contention misconceives the basic thrust of this Court's decisions in the *Nathanson, Giordenello, Aguilar, Spinelli,* and *Whiteley* cases, *supra.* The central proposition common to each of these decisions is that the determination of probable cause is to be made by the magistrate, not the affiant. That the agent-affiant determined the informer to be prudent cannot be a basis for sustaining this warrant unless magistrates are entitled to delegate their responsibilities to law enforcement officials. *Nathanson* held that an affidavit

---

[3] The Government makes brief reference to the assertion that the informant's verbal statement to the affiant was "sworn." Government's Brief 13 n. 2. I do not see how this affects the case. Surely there is no reason to suspect that this indicates the confidant anticipated potential perjury proceedings if he were subsequently proved a liar. Nor does that assertion reveal, in any meaningful sense, what sort of relationship this might have reflected or created between the agent and his informer.

to the effect that the affiant "has cause to suspect and does believe" that illicit liquor was located on certain premises did not sufficiently apprise the issuing magistrate of the underlying "facts or circumstances" from which *"he* can find probable cause." 290 U. S., at 47 (emphasis added). In *Aguilar,* a sworn assertion that the informant was "a credible person" was held insufficient to enable the magistrate to assess that conclusion for himself. Only two Terms ago, we held a warrant constitutionally defective because "[t]hough the affiant swore that his confidant was 'reliable,' he offered the magistrate no reason in support of this conclusion." *Spinelli* v. *United States,* 393 U. S., at 416. Reading the assertion that the informer in this case was "prudent" in the broadest conceivable commonsense fashion, it does no more than claim he was "credible" or "reliable," *i. e.,* that he was likely telling the truth.[4] Such an assertion, however, is no more than a conclusion which the Constitution requires must be drawn independently by the magistrate. What this portion of the affidavit lacks are any of the underlying "facts or circumstances" that informed the agent's conclusion and whose presentation to the magistrate would enable him to assess the probability that this determination was sufficiently plausible to justify authorizing a search of respondent's premises.

B

Nor do I think this void is filled by the fact that the informant claimed to speak from his personal knowledge.

[4] The Court of Appeals in reversing respondent's conviction stated that "[t]he allegation that [the informant] is a 'prudent person' signifies that he is circumspect in the conduct of his affairs, but reveals nothing about his credibility." 412 F. 2d 796, 797–798. I consider this a too restrictive construction of the affidavit and cannot accept that aspect of the reasoning of the Court of Appeals.

It is true that in *Nathanson* the Court was not dealing with the sufficiency of the allegations respecting one or more of the above-described components of probable cause, but merely with a bare overall statement of the affiant that probable cause existed. Further, as the Government notes, our chief, but not sole, emphasis in *Aguilar* was upon the absence of any evidence communicated by the affiant from which a magistrate could infer that the confidant gathered his evidence from a reliable source. From this, the Government contends that *Aguilar*'s reliability-of-the-informer test is not applicable in full force where, as here, it does seem clear that the sources of the informer's belief, if truthfully reported, were reliable. I think this argument makes too much of the circumstances of our previous cases. The central point of the discussion of probable cause in *Aguilar* is, as perhaps more precisely emphasized by our explicit twin holdings in *Spinelli,* see 393 U. S., at 416, that the two elements necessary to establish the informer's trustworthiness—namely, that the tip relayed to the magistrate be both truthful and reliable—are analytically severable. It is not possible to argue that since certain information, if true, would be trustworthy, therefore, it must be true. The possibility remains that the information might have been fabricated. This is why our cases require that there be a reasonable basis for crediting the accuracy of the observation related in the tip. In short, the requirement that the magistrate independently assess the probable credibility of the informant does not vanish where the source of the tip indicates that, if true, it is trustworthy.

This is not to say, however, that I think the fact of asserted personal observation can never play a role in determining whether that observation actually took place. I can perceive at least two ways in which, in circum-

stances similar to those of this case,- that information might be taken to bear upon the informer's credibility, as well as upon the reliability of his sources of information. For example, to the extent that the informant is somehow responsible to the affiant, the fact of asserted personal observation might be of some value to a magistrate in assessing the informer's credibility. In such circumstances, perhaps a magistrate could conclude that where the confidant claimed to speak from personal knowledge it is somewhat less likely that the informant was falsifying his report because, if the search yields no fruit, when called to account he would be unable to explain this away by impugning the veracity or reliability of his sources. However, no such relationship is revealed in this case.

Additionally, it might be of significance that the informant had given a more than ordinarily detailed description of the suspect's criminal activities. Although this would be more probative of the reliability of the information, it might also permissibly lead a magistrate, in an otherwise close case, to credit the accuracy of the account as well. I do not believe, however, that in this instance the relatively meager allegations of this character are, standing alone, enough to satisfy the credibility requirement essential to the sufficiency of this probable-cause affidavit. Reading this aspect of the affidavit in a not unduly circumspect manner, the allegations are of a character that would readily occur to a person prone to fabricate. To hold that this aspect of the affidavit, without more, would enable "a man of reasonable caution," *Berger* v. *New York,* 388 U. S. 41, 55 (1967), to conclude that there was adequate reason to believe the informant credible would open the door to the acceptance of little more than florid affidavits as justifying the issuance of search warrants.

## C

Some members of the Court would reverse the judgment below on the grounds that the magistrate might properly have credited the informant's assertions because they confessed to the commission of a crime. This rationale is advanced notwithstanding the Government's failure even to suggest it.

Had this argument been pressed upon us, I would find it difficult to accept. First, the analogy to the hearsay exception is quite tenuous. The federal rule, although it is often criticized, is that declarations against penal interest do not fall within this exception. *Donnelly* v. *United States,* 228 U. S. 243 (1913). Moreover, because it has been thought that such statements should be relied upon by factfinders only when necessity justifies it, the rule universally requires a showing that the declarant cannot be produced personally before the trier of fact, C. McCormick, Evidence §§ 253, 257 (1954), an element not shown to be present here. See Part V, *infra.* Finally, we have not found any instance of the application of this rule where the witness declined to reveal to the trier of fact the identity of the declarant, presumably because without this knowledge it cannot be readily assumed that the declarant might have had reason to suspect the use of the statement would do him harm. Thus, while strict rules of evidence certainly do not govern magistrates' assessments of probable cause, it would require a rather extensive relaxation of them to permit reliance on this factor. And these rules cannot be completely relaxed, of course, since the basic thrust of *Spinelli, Aguilar, Nathanson, Whiteley,* and *Giordenello, supra,* is to prohibit the issuance of warrants upon mere uncorroborated hearsay. The simple statement by an affiant that an unspecified individual told the affiant that he and another had committed a

crime, where offered to prove the complicity of the third party, is little, if any, more than that.

Secondly, the rationale for this exception to the hearsay rule is that the fact that the declaration was against the speaker's self-interest tends to indicate that its substance is accurate. 5 J. Wigmore, Evidence § 1457 (3d ed. 1940). But where the declarant is also a police informant it seems at least as plausible to assume, without further enlightenment either as to the Government's general practice or as to the particular facts of this case, that the declarant-confidant at least believed he would receive absolution from prosecution for his confessed crime in return for his statement. (This, of course, would not be an objection where the declarant is not also the informant. See *Spinelli, supra,* at 425 (WHITE, J., concurring).) Thus, some showing that the informant did not possess illusions of immunity might well be essential.

Thirdly, the effect of adopting such a rule would be to encourage the Government to prefer as informants participants in criminal enterprises rather than ordinary citizens, a goal the Government specifically eschews in its brief in this case upon the explicit premise that such persons are often less reliable than those who obey the law. Brief for the United States 14.

In short, I am inclined to the view, although I would not decide the question here, that magistrates may not properly predicate a determination that an unnamed confidant is credible upon the bare fact that by giving information he also confessed to having committed a crime. More importantly at this juncture, it seems to me quite clear that no such rule should be injected into our federal jurisprudence in the absence of any representation by the Government that the factual assumptions underlying it do, indeed, comport with reality, and in the face of the Government's apparent explicit assertion, in this very

case, that those able to supply information sufficient to establish probable cause under such a new rule would tend to be less reliable than those who cannot. The necessity for this haste to embrace such a speculative theory, without any argument from those who will be affected by it, wholly escapes me.

## IV

Finally, it is argued that even if the tip plus the affiant's assertion that the informant was "prudent" did not provide a reasonable basis for the magistrate's conclusion that the confidant was credible, two other factors would have sufficed. First, at some time in the past four or more years, in an abandoned house "under Harris' control," the local constable had located "a sizeable stash of illicit whiskey." While an assertion of "prior events within the affiant's own knowledge . . . . indicating that the defendant had previously trafficked in contraband," *ante,* at 581, admittedly did not appear in the affidavit held insufficient in *Spinelli,* this hardly distinguishes that case in any purposeful manner. Surely, it cannot seriously be suggested that, once an individual has been convicted of bootlegging, any anonymous phone caller who states he has just personally witnessed another illicit sale (up to four years later) by that individual provides federal agents with probable cause to search the suspect's home. I can only conclude that this argument is a makeweight, intended to avoid the necessity of calling for an outright overruling of *Spinelli.*

Secondly, the claim is made that a magistrate could conclude the confidant here was credible because the agent had "received numerous information from all types of persons as to [respondent's] activities." To rely on this factor alone, of course, is flatly inconsistent with *Spinelli,* where we held that "the allegation that Spinelli was 'known' to the affiant and to other federal and local

law enforcement officers as a gambler and an associate of gamblers is but a bald and unilluminating assertion of suspicion that is entitled to no weight in appraising the magistrate's decision." *Spinelli, supra,* at 414. In the instant case, the affiant did not purport to "know" respondent was a dealer in illicit whiskey, nor did he identify the source of his information to that effect.

Nevertheless, the contention is advanced that this aspect of *Spinelli* had "no support in our prior cases, logic, or experience," *ante,* at 583, and thus should be discarded. However, *Nathanson* held that "[m]ere affirmance of belief or suspicion is not enough" to establish probable cause for issuance of a warrant to search a private dwelling. 290 U. S., at 47. It is argued that *Nathanson* "was limited to holding that reputation, *standing alone,* was insufficient." *Ante,* at 582. But this is the precise problem here—only the respondent's reputation has been seriously invoked to establish the credibility of the informant, an element of probable cause entirely severable from the requirement that the confidant's source be reliable. See Parts I and III of this opinion.

A narrower view of *Nathanson* is said to be confirmed by reading *Brinegar* v. *United States,* 338 U. S. 160 (1949), to have "held proper the assertion of the searching officer that he had previously arrested the defendant for a similar offense and that the defendant had a reputation for hauling liquor." *Ante,* at 582. But *Brinegar* itself was very carefully limited to situations involving the arrest of those driving moving vehicles, 338 U. S., at 174, 176–177, a problem that has typically been treated as *sui generis* by this Court. Further, the Court in *Brinegar* specifically held the arrest valid "[w]holly apart from [the agent's] knowledge that [the suspect] bore the general reputation of being engaged in liquor running." *Id.,* at 170. While it is true that *Jones* v. *United States,* 362 U. S. 257, 271 (1960), cites the fact that the in-

formant's "story was corroborated by other sources of information," the opinion nowhere suggests that this factor, standing alone, would have been sufficient to enable a magistrate to assess the confidant's reliability. At least equal emphasis was placed upon the informant's previously proved veracity and his tangible proof of actual observation of the illegal activity.

Thus, I conclude that *Spinelli* and *Nathanson*, without contradiction, stand for the proposition that the magistrate could not establish the likely veracity of the unidentified informant on the grounds that his story coincided, in unspecified particulars, with rumors circulated by unknown third parties. I am not certain what is meant by the claim that such a rule of law is illogical. It would, indeed, be illogical to argue that the agent could not have relied upon information as to respondent's reputation that he deemed credible and reliable in concluding that the informant had likely told the truth. But it was not the agent's task to determine whether a search warrant should issue. This was the magistrate's responsibility. As to the magistrate, I confess that I do not comprehend, where the issue is whether the confidant is to be believed, how the agent's assertion that he had "received numerous information from all types of persons as to [respondent's] activities," can, as a matter of logic or experience, be accurately described as other than "a bald and unilluminating assertion of suspicion." It is, at best, a conclusory statement that respondent had a deserved reputation as a dealer in illicit whiskey. The Fourth Amendment, I repeat, requires that such conclusions be drawn, from the underlying facts and circumstances, by the magistrate, not the agent.

## V

The Government has earnestly protested that the result below, if permitted to stand, will seriously hamper the

enforcement of the federal criminal law. It is said that if this affidavit is insufficient to support the issuance of a search warrant, it will be extremely difficult to meet the Fourth Amendment's standards where the informer, although apparently quite credible, has never before given accurate information to law enforcement officers, especially where he, or the agent, is unwilling to have the informant's identity disclosed. It would, indeed, be anomalous if the Fourth Amendment dictated such results, for it surely was never intended as a hindrance to fair, vigorous law enforcement. Further, I think there is much truth in the Government's supporting assertion that the ordinary citizen who has never before reported a crime to the police may, in fact, be more reliable than one who supplies information on a regular basis. "The latter is likely to be someone who is himself involved in criminal activity or is, at least, someone who enjoys the confidence of criminals." Government's Brief 14.[5]

I do not, however, share the Government's concern that a judgment of affirmance would have such a constricting effect on legitimate federal law enforcement. For example, it would seem that such informers could often be brought before the magistrate where he could assess their credibility for himself. We cannot assume that the ordinary law-abiding citizen has qualms about this sort of cooperation with law enforcement officers. And I do not understand the Government to be asserting

---

[5] Of course, the magistrate was presented no evidence that this is, in fact, such a case. Indeed, the very allegations in the affidavit to the effect that the informant here had been a frequent purchaser from respondent would suggest that he "is, at least, someone who enjoys the confidence of criminals." The Government's argument, as I understand it, is that the affidavit in this case is typical of those that can be produced by agents who rely on first-time informers not bound up themselves in criminal activity. As I point out below, if this had been the situation here, and that fact had been communicated to the magistrate, this would be a very different case.

that effective law enforcement will often dictate that the identity of informants be kept secret from federal magistrates themselves. Moreover, it will always be open to the officer to seek corroboration of the tip.

Beyond these considerations, I do not understand why a federal agent, who has determined a confidant to be "reliable," "credible," or "prudent" cannot lay before the magistrate the grounds upon which he based that judgment. I would not hold that a magistrate's determination that an informer is "prudent" is insufficient to support the issuance of a warrant. To the contrary, I would only insist that this judgment be that of the magistrate, not the law enforcement officer who seeks the warrant. Without violating the confidences of his source, the agent surely could describe for the magistrate such things as the informer's general background, employment, personal attributes that enable him to observe and relate accurately, position in the community, reputation with others, personal connection with the suspect, any circumstances which suggest the probable absence of any motivation to falsify, the apparent motivation for supplying the information, the presence or absence of a criminal record or association with known criminals, and the like.

## VI

This affidavit is barren of anything that enabled the magistrate to judge for himself of the credibility of the informant. We should not countenance the issuance of a search warrant by a federal magistrate upon no more evidence than that presented here. A person who has not been shown to possess any of the common attributes of credibility, whose name cannot be disclosed to a magistrate, and whose information has not been corroborated is precisely the sort of informant whose tip should not be the sole basis for the issuance of a warrant, if the constitutional command that "no Warrants shall issue, but

upon probable cause" is to be respected. And the assertion that such a person may be believed where he confesses that he is a criminal or where his statements dovetail with other, unspecified rumors carries its own refutation. With all respect, such an analysis bespeaks more a firm hostility to *Aguilar, Nathanson,* and *Spinelli* than a careful judgment as to the principles those cases reflect. Despite all its surface detail, this affidavit cannot be sustained without cutting deeply into the core requirement of the Fourth Amendment that search warrants cannot issue except upon the independent finding of a neutral magistrate that probable cause exists.

For these reasons, I dissent.