**UNITED STATES of America,**
**Appellee,**

v.

**Thomas George AZZONE, Appellant.**

**No. 72–1091.**

United States Court of Appeals,
Eighth Circuit.

Submitted June 13, 1972.

Decided Aug. 1, 1972.

John R. Wylde, Jr., Thomson, Wylde & Nordby, Douglas W. Thomson, Jack S. Nordby, Saint Paul, Minn., for appellant.

Joseph M. Livermore, Asst. U. S. Atty., Robert G. Renner, U. S. Atty., Minneapolis, Minn., for appellee.

Before ROSS and STEPHENSON, Circuit Judges, and DAVIES,* Senior District Judge.

RONALD N. DAVIES, Senior District Judge.

Thomas George Azzone was indicted for receiving and concealing with intent to convert to his own use, stolen United States postage, in violation of 18 U.S.C. § 641. He was tried to a jury and from judgment of conviction has perfected this timely appeal.

June 17, 1971, the Highland Park Post Office in St. Paul, Minnesota, was robbed of approximately $15,000.00 in U. S. postage. The exact figure is unimportant since the money worth of the stolen postage was clearly established to be far in excess of the value set out in the indictment.

Later on June 30, 1971, a United States Postal Inspector named Gosnell received a telephone call from a police officer in Bloomington, Minnesota, a city comprising part of metropolitan Minneapolis-St. Paul, advising Gosnell that he had received information from a confidential source, that is an informant who "had been very reliable in the past and had furnished information that had resulted in several felony arrests," that the appellant here, Thomas George Azzone, had approximately $15,000.00 worth of United States postage he would sell at half price.

The record reflects that later the same day Inspector Gosnell was notified by the Bloomington police that sale of the postage was to be effected by Azzone at 4:00 p. m., July 1, 1971, in a small park at the junction of Highways 36 and 61 near St. Paul, and that Azzone would be driving a black Cadillac with a specified license number, 4DV727.

Fifteen minutes before the appointed time four Postal Inspectors drove to the indicated road junction, saw the black Cadillac with the license plate 4DV727, approached a man standing near the car, identified themselves, inquired whether the man was Azzone, who admitted his identity, and requested Azzone's permission to search the car. The defendant replied, "there it is, help yourself." Finding nothing in the passenger area an inspector asked Azzone for the key to the car trunk. Azzone pointed to some keys in the ignition. While one inspector moved to the rear of the Cadillac to attempt opening the trunk, another saw Azzone drop a key down the window well on the driver's side front door. Azzone was then arrested by the Postal Inspectors. At this point Azzone attempted to tear up and swallow a paper, later found to be an inventory of the stolen postage. Two Inspectors recovered the key from the window well, opened the trunk and there found and seized stolen postage stock valued at $13,646.44. The Cadillac in which the stolen postage was found was registered in the name of the defendant Azzone.

The issues presented to us are:

(1) Was there probable cause to arrest Azzone, without a warrant, for possession of stolen Government property, in the circumstances here presented?

(2) Was the search of the trunk of Azzone's car, after his arrest, valid in this setting?

We answer each question in the affirmative.

From the plethora of cases cited to us, we distill a very few, which in our judgment, are dispositive of this appeal.

Less than one year ago this Circuit decided White v. United States, 448 F.2d 250 (8th Cir. 1971), a case turning upon validity of arrest, search of a defendant's rented car and the seizure of counterfeit money.

---

* Sitting by special assignment.

In *White*, on June 7, 1970, a Secret Service agent in Omaha, Nebraska, received a telephone call from an informant that a man using the alias of Bennett was in the city with counterfeit money. The informant further told the agent he thought Bennett's real name was White, and gave a detailed description of White and the rented Dodge Charger he was driving. This same informant had supplied reliable information in two or three prior cases, and in the *White* case the information was not based on personal knowledge but was hearsay from a third party. Late in the day on June 7th Omaha police discovered a car matching the description given them by the Secret Service parked on a street. The driver was slumped over the steering wheel. Police surrounded the car and ordered its occupant out of it. The occupant was Bennett, who later confessed his real name was White. As White got out of the car, a policeman reached in the back seat and removed a small plastic bag containing a syringe. White was searched for weapons but had none. His driver's license, obviously altered, bore the name of Bennett. Bennett (White) was thereupon booked for driving with an altered driver's license. It was discovered that White was a known narcotics addict with a history of prior convictions, and based upon this information, together with the syringe found in his car, a warrant to search White's car for narcotics was obtained, and while no narcotics were found 39 counterfeit twenty dollar bills were discovered under the passenger's side of the front seat of the car. White's indictment, prosecution and conviction of possessing counterfeit money followed.

In the case at bar, as in *White*, there is a remarkable similarity between the tips given the authorities:

In each case there was (a) a description of the man; (b) his name; (c) the make of the car the man would be driving; (d) in *White* the name and year of the car, in appellant Azzone's case the name of the car (Cadillac) and its precise license number, 4DV727; (e) in Az-

zone's case the informant said he would have some $15,000.00 worth of United States postage with him and in *White* that the suspect would have twenty dollar counterfeit bills in his possession. We observe that in appellant Azzone's case, as in *White*, the observations were specific and proved to be accurate.

In affirming *White* this Court, speaking through Judge Gibson, said, on page 251:

"The defendant seeks to distinguish *Terry* mainly on the grounds that in this case the officers had not personally observed any suspicious conduct on the part of the defendant, as of the time of the initial stop. It is true that most of the cases involving an 'investigative stop' under the *Terry* case have involved personal observation of suspicious activity by the police officer. However, we do not believe that the justification for an investigative stop under the Fourth Amendment is necessarily predicated upon personal observation. It is rather predicated upon the 'specificity of information' upon which the police act. Terry v. Ohio, 392 U.S. [1] at 21 n. 18, 88 S.Ct. [1868] 1868, 20 L.Ed. 2d 889. This specificity of information can of course be obtained through personal observation. But it can also be obtained from other sources. And one of these traditional sources has always been the informer's tip. In determining whether at the time of this stop, which was admittedly based in part on the informer's tip, the police had enough specific information to justify the intrusion, we must be guided by the standards of Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969); Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964); and Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959); see also United States v. Harris, 403 U.S. 573, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971)."

In *White* the validity of the search warrant was attacked. In appellant Azzone's case there was no search warrant.

Indeed, Azzone gave the officers permission to search his car when he said to them, "There it is, help yourself."

*White* addressed itself to a warrantless search, at page 254, in this manner:

"While the defendant has attacked the validity of the search warrant in this case, we do not find it necessary to pass on this question, because we believe that the search can be justified as a warrantless search based upon probable cause under the principles of Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970). *Chambers* noted that not 'in every conceivable circumstance the search of an auto even with probable cause may be made without the extra protection for privacy that a warrant affords.' *Id.* at 50, 90 S.Ct. at 1981."

Finally, we turn to Adams v. Williams, 407 U.S. 143, 92 S.Ct. 1921, 32 L. Ed. 612 (1972), the most recent pronouncement of the United States Supreme Court in the area of search and seizure. We think this decision effectively places its imprimatur on our decision in White v. United States, 448 F.2d 250 (8th Cir. 1971), and that its rationale is controlling in the case now under consideration.

In *Adams* a police sergeant was patrolling alone in his car on a Connecticut city street in the small hours of the morning. Some person known to the sergeant approached his patrol car and informed the officer that a man seated in a nearby vehicle was carrying narcotics and had a gun at his waist. The police officer approached the car and asked the occupant, Williams, to open the car door. Instead Williams rolled down his window, whereupon the sergeant reached down and removed a fully loaded gun from Williams' waistband. The gun was not visible from outside the car. Williams was arrested for unlawfully possessing a pistol and when other officers arrived Williams and his car were searched. Officers found heroin on his person and in his car. A machete and second revolver were discovered concealed in Williams' car.

Williams argued that the seizure of his revolver, upon which was predicated the search and seizure of the second gun, the machete and narcotics, was not justified by the informant's tip to the Connecticut police sergeant, and that the officer's actions were unreasonable, absent a more reliable informant or some corroboration of the tip under the teachings of Terry v. Ohio, *supra.*

We think it unnecessary to lengthen our opinion by a complete recitation of the text and reasoning in Adams v. Williams, *supra,* but are content to quote its language at page 1923 of 92 S.Ct.:

"In *Terry* this Court recognized that 'a police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possible criminal behavior even though there is no probable cause to make an arrest.' 392 U.S., at 22, 88 S.Ct., at 1880. The Fourth Amendment does not require a policeman who lacks the precise level of information necessary for probable cause to arrest to simply shrug his shoulders and allow a crime to occur or a criminal to escape. On the contrary, *Terry* recognizes that it may be the essence of good police work to adopt an intermediate response."

The Supreme Court concluded in *Adams* by saying at page 1925:

"Probable cause does not require the same type of specific evidence of each element of the offense as would be needed to support a conviction. See Draper v. United States, 358 U.S. 307, 311–312, 79 S.Ct. 329, 331–332, 3 L.Ed. 2d 327 (1959). Rather, the court will evaluate generally the circumstances at the time of the arrest to decide if the officer had probable cause for his action:

'In dealing with probable cause, however, as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal techni-

cians, act.' Brinegar v. United States, 338 U.S. 160, 175, 69 S.Ct. 1302, 1310, 93 L.Ed. 1879 (1949). "See also *id.*, at 177 [69 S.Ct. at 1311]. Under the circumstances surrounding Williams' possession of the gun seized by Sgt. Connolly, the arrest on the weapons charge was supported by probable cause, and the search of his person and of the car incident to that arrest was lawful. See Brinegar v. United States, *supra*; Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925). The fruits of the search were therefore properly admitted at Williams' trial, and the Court of Appeals erred in reaching a contrary conclusion."

Since probable cause existed for Azzone's arrest, the resultant search and seizure incident thereto was fully justified.

The judgment of the District Court is affirmed.