Jack Rosenberg, J.
We are faced here with a motion to Suppress the evidence seized in this case as a result of the execution of a search warrant on May 15, 1970. The defendant is charged with promoting gambling in the second degree in violation of section 225.05 of the Penal Law and possession of gambling records in the second degree in violation of section 225.15 thereof. He was arraigned in the Criminal Court of the City of New York, New York County, and is awaiting trial.
The search warrant was issued on May 15, 1970 by Justice Harold Birns of the State Supreme Court, upon proof by affidavit made before him by Lawrence S. Goldman, Assistant District Attorney in New York County, that there was probable cause for believing that certain property was being used and possessed with intent to be used for an unlawful gambling business consisting of written and taped records of bets and wagers on sports events, pay and collect slips, etc. The search warrant was for an immediate search of an apartment at 345 East 56th Street and of the defendant, Segal.
The supporting affidavit stated that Assistant District Attorney Goldman was on May 15 conducting an investigation to determine whether the crimes of promoting gambling and possession of gambling records were being committed and that on that day Frank Costello appeared before the Fourth May Grand Jury and testified under oath that on that very morning before 11:00 a.m. he had placed three bets for $100 each on the Mets, Yankees and Reds with the defendant who lived on 56th Street near First Avenue, that he had placed two bets for $200 each on the Cardinals and Mets on the preceding day, and that on Wednesday he had placed two bets for $100 each on the Yankees and Twins and three on Tuesday for $100 each on the Yankees, Mets and Reds. Mr. Costello also testified *528 that he had called two bets in to Mr. Segal at a telephone having the number pl 8-0668 which he' believed to be located in Mr. Segal’s home. The affidavit in support of the application for the search warrant also stated that the records of the New York Telephone Company showed the phone in question listed to a Charles Green at 345 East 56th Street. Finally the affidavit stated that Patrolman Joseph Maida, assigned to the New York County District Attorney’s office squad, on April 23, 1970 had received information from a “ confidential informant ” that Harry “ Champ ” Segal is taking bookmaking bets in his apartment, No. 18C at 345 East 56th Street, Manhattan over the telephone and that Segal is working for Anthony “ Fat Tony” Salerno.
On the basis of the foregoing, Supreme Court Justice Harold Birns issued the requested search warrant. The warrant was executed on the same day, May 15, 1970, and two slips of paper referred to as betting slips were seized. These are the bases of the charges of violation of sections 225.05 and 225.15 of the Penal Law: promoting gambling and possession of gambling records, respectively.
On December 14, 1970 the defendant filed the motion here under consideration to suppress the evidence on the ground that it was illegally seized because there was no probable cause to sustain the issuance of the search warrant. But the primary thrust of defendant’s original attack on the warrant was that the warrant was illegally obtained since it was based on information acquired in violation of the State law surrounding Grand Jury proceedings with a shield of secrecy. It was argued that section 952-t of the Code of Criminal Procedure prohibits the copying of any Grand Jury minutes without the prior authorization of the Judge presiding over the term of court for which the Grand Jury is drawn. Section 215.70 of the Penal Law was also cited by the movant. It makes it a crime for the public prosecutor, among others, to disclose to another the nature or substance of any Grand Jury testimony “ except in the proper discharge of his official duties or upon written order of the court.” But the cases relied on by defendant, which are cited for language which talks broadly of the policy of the law to shield the proceedings of the Grand Jury from outside scrutiny, do not sustain this argument as an absolute rule. They make it clear that the determination of whether disclosure of testimony in Grand Jury proceedings should be permitted rests in the trial court’s discretion.
In People v. Di Napoli (27 N Y 2d 229, 234 [1970]) Chief Judge Fuld, speaking for the majority, affirmed that the rule *529 is firmly settled ‘ ‘ that determination of the question whether disclosure should he permitted is addressed to, and rests in, the trial judge’s discretion.” He noted that "In exercising this discretion, the court must balance the competing interests involved, the public interest in disclosure against that in secrecy.” The majority then upheld the decision of the courts below, in the case before them, which had properly found that the public interest would best be served by allowing inspection of the Grand Jury minutes by the Public Service Commission. Discussing the factors that lead to maintaining secrecy of Grand Jury testimony, Chief Judge Fuu> listed them (at p. 235) as " (1) prevention of flight by a defendant who is about to be indicted; (2) protection of grand jurors from interference from those under investigation; (3) prevention of subornation of perjury and tampering with prospective witnesses at the trial to be held as a result of any indictment the grand jury returns; (4) protection of an innocent accused from unfounded accusations if in fact no indictment is returned; and (5) assurance to prospective witnesses that their testimony will be kept secret so that they will be willing to testify freely.” (See, also, People v. Behan, 37 Misc 2d 911; Matter of Attorney General of United States, 160 Misc. 533.)
It is noteworthy also that the testimony before the Grand Jury here involved is testimony which disclosed precisely the type of crime which the Grand Jury was investigating, whether crimes of promoting gambling and possessing gambling records were being committed, and that the witness who gave the testimony well knew, when giving it, that he was opening his bookmaker to possible police counteraction. To argue that the requirement of secrecy bars a follow-up investigation on such evidence is to stultify the very purpose of the Grand Jury investigation.
Finally it is paradoxical to argue that an application to a Judge in camera for a search warrant is equivalent to publication to the public or to unauthorized persons of secret Grand Jury testimony. If a purpose of surrounding Grand Jury testimony with a shield of secrecy is to prevent the flight of a defendant who is about to be indicted, it is equally true that an application for a search warrant and its supporting affidavit is equally to be shielded until the warrant is executed.
Apparently aware of the foregoing defects in his contentions, defendant also advanced, and in his later submissions stressed heavily, the argument that the bases of the application for the warrant failed to satisfy the requirements established by the United States Supreme Court in Aguilar v. Texas (378 U. S. *530 108 [1964]) and Spinelli v. United States (393 U. S. 410 [1969]). In Aguilar the United States Supreme Court struck down a search warrant granted to local police by a Houston Justice of the Peace as in violation of the Fourth Amendment’s bar on unreasonable searches and seizures made applicable to the States by the Fourteenth Amendment. The affidavit of the policemen who obtained the warrant stated that the affiants had “ received reliable information from a credible person ” and believed that “ heroin, marijuana, barbiturates and other narcotics and narcotic paraphernalia ’ ’ were being kept at the described premises for sale and use contrary to law. The warrant was served by police, accompanied by Federal agents, who broke in when they heard a commotion, after announcing their presence with a warrant, and seized the petitioner in the act of trying to dispose of a packet of narcotics.
In upholding, as valid, the petitioner’s objection to the introduction of the seized narcotics, the court in Aguilar (supra, p. 115) ruled that the Fourth Amendment’s protection denies law enforcement officers the support of the usual inferences reasonable men draw from evidence, but requires, rather, that those inferences be drawn by “1 a neutral and detached magistrate ”’ instead of being judged by the officer ‘11 engaged in the often competitive enterprise of ferreting out crime ’ ”. The court also said, “Although an affidavit [supporting an application for a search warrant] may be based on hearsay information and need not reflect the direct personal observations of the affiant, Jones v. United States, 362 U. S. 257, the magistrate must be informed of the underlying circumstances from which the informant concluded that the narcotics were where he claimed they were, and some of the underlying circumstances from which the officer concluded that the informant, whose identity need not be disclosed, see Rugendorf v. United States, 376 U. S. 528, was ‘ credible ’ or his information 1 reliable.’ ” (Aguilar, supra, at p. 114).
Five years later, in Spinelli, the United States Supreme Court further elaborated the doctrine of Aguilar. There, the affidavit supporting the search warrant was by an FBI agent and stated that the FBI had kept track of the defendant’s movements on five days in August, 1965. On four of those days the defendant was seen crossing the bridge from Illinois to St. Louis, Missouri, between 11:00 a.m. and 12:15 p.m. On those days defendant parked his car in a lot used by residents of an apartment house in St. Louis between 3:30 p.m. and 4:45 p.m. On one day the defendant was followed further and *531 seen to enter a particular apartment. An. FBI check showed two phones to be listed in this apartment under the name of a Grace P. Hagen. The affidavit also stated that the defendant was known to the affiant and Federal law enforcement officers as a bookmaker, an associate of bookmakers and an associate of gamblers. Finally the affidavit said that the FBI had been informed by a confidential reliable informant that the defendant was operating a handbook and accepting wagers and disseminating wagering information by the telephones assigned to the apartment.
In holding this affidavit insufficient to sustain the warrant based on it, Justice White in a concurring opinion said: “ If an affidavit rests on hearsay — an informant’s report — what is necessary under Aguilar is one of two things: the informant must declare either (1) that he has himself seen or perceived the fact or facts asserted; or (2,) that his information is hearsay, but there is good reason for believing it — perhaps one of the usual grounds for crediting hearsay information * * *. But if, for example, the informer’s hearsay comes from one of the actors in the crime in the nature of an admission against interest, the affidavit giving this information should be held to be sufficient.” (at p. 425).
The doctrine of Aguilar and Spinelli was applied by our own Court of Appeals in People v. Hendricks (25 N Y 2d 129 [1969]). In that case the court held invalid a search warrant based on an affidavit by a detective showing only an informant’s assertion that the defendant had hidden on his person and in his residence certain contraband and stolen property. There had been a timely motion to suppress the physical evidence for lack of probable cause to sustain the warrant. It had been granted, in part, as to material not mentioned in the warrant but denied as to guns found in the search, which had been mentioned in the warrant.
In holding that the motion to suppress should have been granted, the court described the test of Aguilar and Spinelli as “two-pronged”: (1) Whether the informant is in fact-reliable; and (2) whether the underlying circumstances as to how the informant came by his information demonstrates sufficient probability of credibility to allow the search of the premises or person in question. In Hendricks, the Court of Appeals found that the first prong of the test was met by the detectiveaffiant ’s statement ‘ ‘ that the informant is known to him and has in the past furnished information leading to the arrest and conviction of others ” (at p. 133). But the court found the *532 second part of the test had not been met because there was nothing in the affidavit to establish a basis for the reliability of the information as distinguished from the reliability of the informant.
In the instant case, the situation is the reverse of that in Hendricks. The reliability of the information is clearly established. The “informant”,- Frank Costello, stated under oath that he, of his own knowledge, had phoned the defendant at a stated number, in his apartment, and placed with him several bets on the outcome of baseball games. He stated he had done the same on previous days. Hence the reliability of the information as to violation of the Penal Law sections against promoting gambling by means of the specified telephone and possession of gambling records in the apartment is clearly established for the Magistrate issuing the search warrant. The sole question is as to the reliability of the informant, Frank Costello. In this connection, it is important to note that he was testifying under oath. Further, by testifying as he did, he, as an old experienced hand in dealing with law enforcement officials, knew he was making a statement which would probably lead to a follow-up police investigation of the bookmaker he had named, that he was throwing him into the soup. He was also well aware of the dangers to himself of perjury. He knew that he, as a mere ‘ ‘ player ’ ’ was immune to any criminal sanctions except for perjury or contempt. (See Penal Law, § 225.00.) Standing alone, these facts were certainly sufficient to establish his reliability as an “ informant. ’ ’ In this instance, there was certainly enough to establish for the Magistrate issuing the warrant both the reliability of the source of the information and the reliability of the information itself.
The foregoing discussion would dispose of the motion here under consideration, were it not for the decision in People v. Wheatman (33 A D 2d 67 [1st Dept., 1969]). In that case, as in the instant case, a search warrant was issued on the basis of an affidavit by an Assistant District Attorney that he had heard sworn testimony of “ a number of witnesses ” (unidentified) before a Grand Jury investigating crimes of bid rigging, bribery of public officers, bribery of labor representatives, extortion, etc., in which they stated that they were parties to an agreement to rig bids at the City Housing Authority which involved receipt of information from Housing Authority employees as to estimated man-days it should take to paint certain portions of Housing Authority, projects. This information had been used to submit false bids to the Housing Authority. The affidavit sought .a search warrant for the files of the *533 defendants for copies of the estimate information. The Appellate Division majority ruled (p. 69) that the affidavit failed to meet the two-pronged test of Aguilar and Spinelli in failing to inform the Magistrate of ‘ ‘ the underlying circumstances which support the conclusion and belief of the affiant that his informant was credible and his information reliable”. There was a strong dissent by Justice McNally, in which Justice Tilzer concurred, arguing that Grand Jury testimony is not analogous to unsworn statements of informers and that courts should sustain search warrants in doubtful or marginal cases since probable cause requires less evidence than proof of guilt. In the minority’s view, the search warrant was clearly issued on probable cause.[1]
In our view, Wheatman is not applicable to the case before us. In Wheatman the affidavit supporting the application for the search warrant failed to identify the witnesses before the Grand Jury whose testimony was the source of the affiant’s information nor was their testimony, as reflected in the Assistant District Attorney’s affidavit, so described as to enable the Magistrate to know whether they had been speaking of their own knowledge rather than from hearsay. In the case here under consideration, Frank Costello, the source of the information, was shown by the affidavit to be speaking of conversations he himself had had with the defendant and of bets he himself had placed with him and calls he himself had made to him. Hence, there could be no question that the Magistrate had knowledge of the underlying circumstances as to how Costello came by his information sufficient to enable him to evaluate the probability of its having sufficient credibility to allow the search of the premises in question. And since the source was identified as a public figure with a widely established reputation as one who was familiar with the seamy side of life in New York City, the Magistrate (Justice Bran's) could easily evaluate his credibility in the specific circumstances in the case. This court finds no basis for disagreement with the determination of the signer of the warrant that there was probable cause to support its issuance.
*534 A recent decision of the United States Supreme Court (United States v. Harris, 403 U. S. 573), decided June 28, 1971, serves to reinforce this conclusion. There, the informant was unknown to the Magistrate issuing the warrant, his identity being concealed, according to an affidavit from a Federal tax investigator seeking the warrant, because the informant feared for his life, should his name be revealed. He was described as “ a prudent person ” and he gave his information in a “ sworn verbal statement ”. It was, according to the Federal tax investigator’s affidavit, that he ‘ ‘ has purchased illicit whiskey from within the residence described, for a period of more than 2 years, and most recently within the past 2 weeks, has knowledge of a person who purchased illicit whiskey within the past two days from the house, has personal knowledge that the illicit whiskey is consumed by purchasers in the outbuilding known and utilized as the ‘ dance hall, ’ and has seen Roosevelt Harris go to the other outbuilding, located about 50 yards from the residence, on numerous occasions, to obtain whiskey for this person and other persons.” The United States Court of Appeals had reversed a conviction on the ground that the affidavit above described was insufficient to establish probable cause, relying on Aguilar (supra) and Spinelli (supra) and stressing that the affidavit described the informant only as “prudent”, not as truthful.
In reversing, Chief Justice Burger, joined by Justices Black, Blackmun and Stewart, stressed that (pp. 579-580), regardless of the word used to describe the informant, the affidavit supporting the warrant contained “ an ample factual basis for believing the informant which, when coupled with his own knowledge of the respondent’s background, afforded a basis upon which a magistrate could reasonably issue a warrant.” The same four Justices rejected the view advanced in Spinelli that a policeman’s knowledge of a suspect’s reputation is not “ ‘ a practical consideration of everyday life ’ ” upon which an officer (or a Magistrate) may properly rely in assessing the reliability of an informant’s tip. They took the position that, to the extent that Spinelli prohibits the use of such probative information, it has no support in prior cases, logic or experience, and they declined to apply it to preclude a Magistrate from relying on a law enforcement officer’s knowledge of a suspect’s reputation. In this connection, it is noteworthy that a second basis of the affidavit supporting the search warrant here under consideration by this court is that Patrolman Joseph Maida, assigned to the New York County District Attorney’s' office squad, had received information from a *535 ‘1 confidential informant ’ ’ that the movant, Segal, .was taking bookmaking bets in his apartment at 345 East 56th Street. The prosecution’s brief in opposition to the motion concedes that if the sole basis for the warrant were the foregoing, the warrant would fall, presumably because there is no information to show the reliability of the confidential informant. But four members of the Supreme Court in Harris might well view this as adding significant information to help support a finding of probable cause. Of course, since there are four dissenters who view the affidavit in Harris as insufficient and find the warrant invalid, the foregoing limitation of Spinelli is not yet law.[2]
In view of the foregoing, the motion to suppress is denied.

. Reargmnent was granted by the Appellate Division in this case after it handed down the decision discussed above (33 A D 2d 1107). On the basis of the reargument, that court reversed itself. It did so on the basis of a new holding that the appellant, Wheatman, was without standing to bring the motion to suppress (34 A D 2d 3). This change in no way requires any alteration in the conclusions reached herein that Wheatman does not support the defendant Segal’s motion to suppress.

. The warrant was upheld only because Mr. Justice White joined Chief Justice Burger, and Justices Black, Blackmum and Stewart in voting for reversal on the ground that the fact that the informant’s statement was against his penal interest, involving his admission of a crime, made it sufficiently reliable to establish probable cause.