UNITED STATES, Appellee

v

ALAN W. HENNIG, Private, U.S. Army, Appellant

No. 26,371

June 29, 1973

*Captain Peter J. Kenney* argued the cause for Appellant, Accused. With him on the brief were *Colonel Arnold I. Melnick* and *Captain Barry K. Duwe.*

*Captain R. Craig Lawrence* argued the cause for Appellee, United States. With him on the brief were *Lieutenant Colonel Ronald M. Holdaway, Major Thomas P. Burns, III, Captain Richard L. Menson,* and *Captain Glenn R. Bonard.*

## OPINION OF THE COURT

QUINN, Judge:

At trial, the accused objected to the admission in evidence of heroin discovered in the course of a search authorized by Captain Mansfield, his company commander. The objection was overruled, and the accused now challenges the correctness of the ruling.

About 10:00 p.m. on September 3, 1971, Rosenquist, a member of the accused's company who was apparently facing charges for "an offense involving drugs," appeared at the Provost Marshal's office where he spoke to Investigator Hartman. He was known to Hartman, who regarded him as a reliable informant. Rosenquist had made two recent reports in narcotic cases which had "proved correct;" in one, there had been an arrest, and in the other, "a civilian matter" involving military personnel, no arrest had been made, but his information had been corroborated. Hartman discussed what he learned from Rosenquist with his "partners" and Lieutenant Phillips, the duty officer in the battalion commander's office.

As a result of the discussion with the investigators, Lieutenant Phillips telephoned Captain Mansfield at his home. He advised Mansfield that, on the basis of a report from a "reliable informant," Hartman requested authority to search the accused. A few days earlier, Mansfield had received a CID request for an authorization to search, which, like Hartman's, was based upon a "reliable source." Before acting on the request, he had "contacted" the Judge Advocate's office for general information as to the requirements for grant of authority to search and had been advised that, if the investigator could "convince" him of the reliability of the informant, he could consider whether there was probable cause for a search. Apparently, Captain Mansfield recalled this advice because he informed Lieutenant Phillips that he would not authorize the search until he first talked directly with Hartman.

Captain Mansfield telephoned Hartman. He had "work[ed]" with Hartman before, and knew of "no reason" for Hartman to lie. Hartman told him he could not disclose the identity of the informant, but he represented that the informant was "one hundred percent reliable."[1] Mansfield asked what that meant. Hartman replied that "during the past couple of weeks," information furnished by the informant had been "proved correct" in "two out of two" cases. Now, the informant reported that he had conversed with Kutenow and the accused that night in the battalion area, and they had said they "were in possession of heroin." According to Hartman, the informant was not sure which of the two had the drug. Captain Mansfield recalled that he previously authorized a search of the accused on the basis of a report of use of drugs; no incriminating evidence had been found, but the accused had admitted to Captain Mansfield that he had used drugs "in the past." Mansfield advised Hartman he would not authorize a search unless Hartman made "clear [to him] which one," Kutenow or the accused, actually had the heroin. Hartman apparently indicated that he would have the informant immediately "contact" Kutenow and the accused "separately" and report which of them had the heroin. Mansfield agreed to come to battalion headquarters.

After he had talked to Hartman, Mansfield telephoned the battalion commander. He apprised him of Hartman's request and his response. Asked by the commander if he was satisfied there was probable cause to search, Mansfield indicated that he would be satisfied if Hartman told him "exactly who it was who was in possession" of the drug.

Mansfield dressed and went to the battalion commander's office. It was then about 1:00 a.m. He met Lieutenant Phillips and Hartman. Within about five minutes, Investigator Jacobson arrived. He reported that the informant had "in fact approached both" Kutenow and the

---

[1] After the accused's arrest, Captain Mansfield was informed that Rosenquist was the informant. Defense counsel was apprised of the identity of the informant the day before trial. At trial, defense counsel was granted a recess, and then a continuance, to "delve" into Rosenquist's background and "to question" him more extensively than he had during the recess.

accused. The information supplied by the informant, which we shall consider specifically later, was that it was "definitely" the accused who "was in possession" of the drug. Mansfield concluded that probable cause had been established and he authorized a search.

Three investigators, Lieutenant Phillips, and Mansfield proceeded first to the company orderly room to check the bed chart to be "sure" of the accused's bunk assignment. They then went to his quarters. As the group approached the accused's bunk, they saw Rosenquist "standing in [the accused's] area." The accused seemed to make "a sort of sweeping motion" to pull a blanket and sheet over his pillow. The investigators identified themselves as such to the accused and read him "his rights." One of the investigators then lifted the pillow and found a syringe with a small quantity of white liquid, two pieces of foil containing a white powder, and some loose white powder. A vial containing tinfoil packets of a similar white powder was found under one of the bedposts. Laboratory analysis established that the powder was heroin.

■ That a search has been authorized by a person competent to give such authority does not itself demonstrate the legality of the search. United States v Alston, 20 USCMA 581, 44 CMR 11 (1971). The authorization must be justified by facts presented to the issuing officer that would lead a reasonable, prudent person to conclude that the matter for which the search is to be made constitutes evidence relevant to a crime, and that the matter is at the place or on the person to be searched. Stated otherwise, the facts known to the issuing officer must establish probable cause for the search. United States v Alston, supra at 583, 44 CMR at 13; United States v Martinez, 16 USCMA 40, 36 CMR 196 (1966). Thus, determination of the legality of a search depends upon the facts of the particular case.

A reading of the record discloses that the facts known to the Provost Marshal investigators were either not fully reported to Captain Mansfield or they were reported but were not recalled by the captain at the trial. For example, Investigator Jacobson testified that when Rosenquist first reported, he said that he had "seen" the heroin, but Captain Mansfield testified only that Hartman told him the informant reported he had "seen the two [Kutenow and the accused] together," but he could not remember whether Hartman also said that the informant had reported that he "saw them with it." The differences in testimony emphasize the need for a timely record of the facts in the form of a written application for the authorization to search. United States v Martinez, supra. On this appeal, we are compelled to disregard those facts that were not clearly shown to be known by Captain Mansfield when he authorized the search. See United States v Clifford, 19 USCMA 391, 393, 41 CMR 391, 393 (1970).

Appellate defense counsel challenge Captain Mansfield's authorization on two grounds. First, they contend the information presented to him was insufficient to establish Rosenquist's reliability. They posit a number of questions that Captain Mansfield could have asked Hartman about Rosenquist, and they point to Captain Mansfield's admission at trial that had he known Rosenquist was the informant, he "would have probably needed a little bit more" evidence of reliability than provided by corroboration of a single report.[2] What Captain Mansfield could have done to inform himself more fully about the informant's reliability is not the issue; what matters is whether the information supplied to the captain was sufficient to allow a prudent person to believe that the informant was reliable.

■ It is obvious that Mansfield was not a compliant instrument of the Provost Marshal investigators. In fact, he inquired about the identity of the informant, and when advised that his identity could not be disclosed, he demanded evidence of reliability other than the representation that he was "one hun-

---

[2] Appellate defense counsel disclaim any suggestion that there was "deliberate falsification" by Hartman as to Rosenquist's reliability.

dred percent reliable." He knew from previous experience and his telephone conversation with the battalion commander, that, before he granted authorization to search, he had to be personally convinced. He determined that the informant's reliability had been "proved" in two cases within a brief period of time. He also knew that the person charged with possession by the informant had admitted to him previous use of drugs. He could regard that knowledge as corroborative of the informant's report. In our opinion, the evidence considered by Captain Mansfield supported a reasonable belief in the reliability of the informant. See United States v Harris, 403 US 573 (1971). Accordingly, there is no merit in this aspect of the accused's attack on the authorization to search.

Turning to the evidence as to the accused's possession of the heroin, appellate defense counsel call attention to Captain Mansfield's negative answer to the judge's question as to whether he had been "told what, if anything, had transpired which led him to the conclusion that the accused was in possession." This answer, they maintain, demonstrates that Mansfield had no knowledge of any facts to justify a belief that the accused possessed the drug. Captain Mansfield's answer, however, appears in a different light when read in context with the preceding part of his examination by the trial judge.

After inquiring into the factual basis for Mansfield's belief in the reliability of the informant, the judge examined him as to the circumstances that led him to conclude that the accused, rather than Kutenow, had possession of the heroin. He reviewed the facts initially reported to him by Hartman. The examination then continued as follows:

Q. In other words, you were advised that the informant had been in conversation with Hennig and Kutenow and they had told him that they were in possession of heroin. Is that correct?
A. Yes, sir.

Q. You said that the first information was that either of the two individuals, that is, one or the other, was in possession and later on that information *upon your demand* was refined to indicate that the accused was in possession. Were you supplied with any basis for this conclusion?
A. As to which one was actually in possession?

Q. Yes.
A. Yes, sir. This was done by *informant who was to contact each of the individuals separately,* Kutenow and Hennig, and then he would direct the Provost Marshal Investigator to the one that did have it at that time.

Q. And *were you later advised that he had in fact approached both of the two individuals?*
A. *Yes, sir.*

■ At the risk of appearing redundant, we think it appropriate to list sequentially the facts contained in the underscored portions of the testimony.

(1) According to Mansfield's "demand," the informant, separately, was to "contact" Kutenow and the accused.

(2) The informant was to be instructed "to find out" specifically which of the two had the drug.

(3) The informant reported within a short period of time that he had "in fact approached" both Kutenow and the accused and that the "accused was . . . in possession."

(4) Investigator Jacobson advised Captain Mansfield that (a) the informant "had in fact approached both of the two individuals," and (b) that he had reported "that the accused had it."

From these facts Mansfield could, in our opinion, fairly infer that, in approaching the accused and Kutenow, the informant had either seen the heroin in the accused's actual possession, or he had been told that the accused had it. If the accused made the admission of possession, his statement was patently sufficient to justify Mansfield's belief that he had the drug. If Kutenow made the statement, it was also sufficient because his association with the accused and apparent joint interest in the drug indicated, in reasonable probability, that he had knowledge of the drug's exact whereabouts. In context, therefore, the negative answer that Mansfield gave to the judge's question as to whether he had been told what "had

transpired" does not mean, as appellate defense counsel contend, that Captain Mansfield did not know the "manner" in which the informant had "singled out appellant as the individual currently in possession of the contraband." Mansfield apparently meant only to indicate that he was not apprised of the details of the informant's separate contact with Kutenow and the accused. From the fact that the trial judge, trial counsel and defense counsel did not question Mansfield further about the matter, it may be inferred that they, like the captain, perceived no inconsistency between the negative answer cited by the accused and the captain's earlier testimony that he had been told about the informant's direct approach to the accused and Kutenow. Considering the testimony as apparently construed by the parties at trial, we are satisfied that Captain Mansfield could fairly conclude that, from the facts before him, the accused had possession of the heroin. Consequently, his authorization to search was legally justified, and the heroin obtained in the course of the search was properly admitted into evidence at trial.

The decision of the Court of Military Review is affirmed.

Chief Judge DARDEN concurs.

DUNCAN, Judge (dissenting):

I would hold that the authorization to search given by Captain Mansfield was not based upon probable cause, thereby rendering the fruits of the search inadmissible. See United States v Alston, 20 USCMA 581, 44 CMR 11 (1971); United States v Martinez, 16 USCMA 40, 36 CMR 196 (1966).

In general, there is no requirement that the facts relied on by the commanding officer in authorizing a search be the result of his personal knowledge or observation. A reasonable belief may be based on hearsay information which the authority requesting permission to search has received from a third party, if (1) the underlying circumstances from which the authority requesting permission to search concluded that the third party, who is the source of his information and whose identity need not be disclosed, was credible, or his informa-

tion reliable, and (2) the officer authorizing the search has been apprised of the underlying circumstances from which the third party concluded the items in question were where he claimed they were. This two-pronged criteria was first enunciated by the Supreme Court in Aguilar v Texas, 378 US 108 (1964), and followed by this Court in United States v Penman, 16 USCMA 67, 36 CMR 223 (1966). See also paragraph 52, Manual for Courts-Martial, United States, 1969 (Revised edition).

Even if I assume that the record did in fact disclose the reliability of the informer, the second prong of the *Aguilar-Manual* test was not sufficiently shown. It is noted again that this requirement dictates that sufficient underlying circumstances be made available to the commanding officer to enable him to make the independent and informed judgment required.

Captain Mansfield testified:

Q. [Military Judge]. . . . Now, I'd like you to think back as to the information which was relayed to you by the PMI with whom you dealt on that evening and tell me what, if any, details they supplied to you originating from this confidential informant as to the basis of his conclusion that the accused was in possession? What I mean by that is this: *Did they simply tell you that the informant said he was in possession or did they tell you why the informant knew this, that is, that he had seen the purchase, that he had participated in the purchase if there was one, where it was, why the informant knew if he did that Hennig was in possession?* Do you understand my question?
A. Yes, sir. Hartman did not—I cannot remember Hartman actually telling me that the informer had actually seen the narcotics. He knew it was there from conversation with—the informer knew it was there from conversation with the other two individuals that evening.

. . . . .

Q. Were you told what, if anything, had transpired which led him to the conclusion that the accused was in possession.

A. *No, sir.* [Emphasis added.]

Earlier Captain Mansfield had testified on cross-examination that he could not remember Hartman indicating to him that the informant had ever seen appellant or the other suspect with the contraband. He was not sure where the informant had seen appellant that evening, and he was not told what the circumstances of the alleged meeting had been.

In sum, the informer first declared that either the appellant or Kutenow possessed the heroin, a fact he learned as a result of a conversation with the pair. It next appears that the informer was instructed to contact each of the men separately and report back. His report then was that Hennig was the one, but there was no basis stated for this conclusion. In my opinion, if there were a basis for the informer's statement that the appellant possessed heroin, Captain Mansfield did not state that it was disclosed to him and it was not spread upon the record of trial. From these facts I do not believe that Mansfield could fairly infer that "the informant had either seen the heroin in the accused's actual possession, or he had been told that the accused had it." What the facts in this case ultimately reduce to is a situation wherein an affiant avers to a magistrate that a reliable informant stated that he had conversed with X and Y, that X and Y admitted they were in the possession of heroin, and that the informant subsequently approached X and Y and learned Y was the one actually in possession of the contraband. None of the underlying facts through which the informant learned that it was Y who had the heroin were given to the magistrate. It remains pure speculation whether the informant actually saw the heroin, or whether he just surmised such was so because X declined to admit that he had it himself, or whether Y might have bluffed possession while awaiting the tender of the purchase price. Thus, Captain Mansfield's decision to authorize the search was not based on knowledge of the underlying circumstances indicative of the manner in which the informant garnered the basis for his conclu-

sion that the appellant was in possession of drugs.

Furthermore, I find the Government unable to avail themselves of any of the principles set out in United States v Spinelli, 393 US 410 (1969), through the utilization of any competent corroborative evidence of record that might deem the information conveyed to the authorizing officer sufficient to establish probable cause. The record reveals only one instance of additional information possibly available for consideration by the authorizing officer.

Captain Mansfield testified that he had received one prior report on appellant that he readily characterized as "unproven suspicion."

Q [Defense Counsel]. You say you suspected Hennig. What was your basis for this?

A. On at least one occasion in the past, a Staff Sergeant Oliver came down to my office and told me that he had just observed Hennig and some other people possibly about to shoot up with Heroin in the latrine.

Q. Possibly?
A. Well, it wasn't just exactly clear who was going to do the shooting. Hennig had a syringe in his hand. When I went up there with Oliver, there was nothing, absolutely nothing.

Appellant and the others involved were searched immediately following this incident and no narcotics or paraphernalia were uncovered. During this search appellant denied using heroin although admitting he had used drugs in the past. As for probative value, there is no indication of when this alleged incident occurred and the fact that Captain Mansfield had been appellant's company commander for 14 months. Thus, appellant's " 'admitted past drug use' " may easily have been more than a year old at the time of the incident in question. The characterization of this evidence as "mere suspicion" and the absence of any time reference surely renders the incident even more " 'bald and unilluminating' " than the FBI surveillance considered in United States v Spinelli, supra.