■ THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v STEPHEN WIRCHANSKY, Also Known as STEVEN WIRCHANSKY, Resondent.—Appeal by the People from an order of the County Court, Westchester County, dated October 31, 1973, which granted defendant's motion to suppress evidence seized pursuant to a search warrant. Order reversed, on the law, and motion denied. Simply stated, the issue in this appeal is whether there was probable cause for the issuance of the search warrant. The affidavit upon which the warrant was issued was made by a detective in the Yonkers Police Department. He deposed that on May 21, 1973, between the hours of 11:30 A.M. and 12:30 P.M., he personally observed defendant slowly drive past a certain address in Yonkers "looking in the area of" the premises, drive off and then return a few moments later. Defendant parked his vehicle, entered the premises, remained a few minutes and then left and drove off. The detective observed defendant repeat the same routine, at the same times, on the three days following, viz., May 22 through May 24, 1973. The affiant went on to state that he had received information from a confidential informant that "gambling paraphanalia [sic] commonly associated with a bookmaking and policy scheme" was being left in a common hallway in the premises in question and was being picked up daily by defendant. Information previously supplied by the informant had resulted in a search in Yonkers in January, 1973, four months previously, which had uncovered gambling and policy slips. The affiant further deposed that by reason of investigations over the prior two years and the fact that defendant had been arrested on May 5, 1973 for gambling violations, defendant was known to him and to other members of the Yonkers Police Department to be involved in gambling and that, based upon his experience and knowledge of gambling operations, and especially the times at which defendant's activities took place, he was of the opinion that defendant was "a pick-up man in a policy operation." The affiant requested the issuance of a warrant authorizing a search of defendant, the premises (specifically the common hallway and mailbox) and defendant's identified vehicle. As has been often stated, affidavits in support of applications for search warrants must be tested by Magistrates and courts in a common-sense and realistic fashion. They are normally drafted by nonlawyers in the midst and haste of a criminal investigation (see, e.g., *United States v Ventresca,* 380 US 102, 108; *United States v Harris,* 403 US 573, 577). In *Harris,* the court noted (p 584): "More important, the issue in warrant proceedings is not guilt beyond reasonable doubt but probable cause for believing the occurrence of a crime and the secreting of evidence in specific premises". Using this common-sense approach, and viewing the circumstances as the detective viewed them, we conclude that there was probable cause for the issuance of the warrant. It may be true that the affidavit in support of the warrant, insofar as it concerned the unnamed informant, did not meet the technical requirements established in *Aguilar v Texas* (378 US 108) and *Spinelli v United States* (393 US 410). Although the affiant may have established the informant's reliability by showing that information previously supplied by him had proven correct, he offered nothing to show that the present information was

reliable. There was nothing in the affidavit to indicate when, where or how the informant obtained his data. And so, had the detective relied solely on the informant, there would not have been probable cause for the issuance of the warrant (see *People v Sutton,* 32 NY2d 923, revg 38 AD2d 567 [on dissent at App Div]). However, there was much more. The affiant knew defendant's reputation, knew that he had been arrested for gambling only a few weeks before and knew, from years of experience, that defendant's *modus operandi* was that normally followed in bookmaking and policy operations. In discussing this issue, in *United States v Harris (supra,* p 582), Chief Justice Burger stated: "But a careful examination of *Nathanson* shows that the *Spinelli* opinion did not fully reflect the critical points of what *Nathanson* held since it was limited to holding that reputation, *standing alone,* was insufficient; it surely did not hold it irrelevant when supported by other information. This reading of *Nathanson* is confirmed by *Brinegar v United States* * * * in which the Court, in sustaining a finding of probable cause for a warrantless arrest, held proper the assertion of the searching officer that he had previously arrested the defendant for a similar offense and that the defendant had a reputation for hauling liquor. Such evidence would rarely be admissible at trial, but the Court took pains to emphasize the very different functions of criminal trials and preliminary determinations of probable cause." The Chief Justice continued (p 583): "We cannot conclude that a policeman's knowledge of a suspect's reputation—something that policemen frequently know and a factor that impressed such a 'legal technician' as Mr. Justice Frankfurter—is not a 'practical consideration of everyday life' upon which an officer (or a magistrate) may properly rely in assessing the reliability of an informant's tip." To sum up, the affiant received a tip from an informant who, on a prior occasion, had supplied correct information. The current information was corroborated by what the affiant knew about defendant's reputation and his prior arrest record, as well as by the affiant's personal observation of defendant's conduct which, because of his police experience, the affiant knew to be consistent with gambling activity. Upon the totality of the circumstances there was probable cause for the issuance of the warrant and, accordingly, the motion to suppress should have been denied. Latham, Cohalan and Munder, JJ., concur; Hopkins, Acting P. J., and Brennan, J., dissent and vote to affirm the order.