UNITED STATES, Appellee

v

ROBERT M. GUERETTE, Sergeant, U. S. Air Force

*Captain George L. Squires,* USAF, argued the cause for Appellant, Accused. With him on the brief was *Colonel William E. Cordingly,* USAF.

*Colonel C. F. Bennett,* USAF, argued the cause for Appellee, United States. With him on the brief was *Lieutenant Colonel Stark O. Sanders,* USAF.

## OPINION OF THE COURT

Cook, Judge:

Upon trial by special court-martial, the defendant was convicted of two counts of violating a general regulation by possessing marihuana and d-amphetamine. For these offenses, he was sentenced to a bad-conduct discharge and 6 months' confinement at hard labor. Both the findings and sentence were approved and affirmed by intermediate reviewing authorities. However, while the case was pending before the Court of Military Review, the Commander, Lowry Technical Training Center, suspended the bad-conduct discharge and the remaining confinement for a stated period, with a provision for automatic remission.

The two substances supporting the charges were found during a search of an automobile that was being used by accused. This search and the incident seizure of the items are the basis for the single question now before the Court, namely, whether the military judge erred to accused's prejudice by overruling the defense objection that the items were inadmissible as the product of an illegal search and seizure.

Two contentions must be dealt with in order to decide the matter in dispute. First is the claim that the search was authorized by a person who was not a "neutral and detached magistrate" and second, that there was not probable cause to support the granting of authority to make the search.

As to the defense contention that the search was authorized by a person who was disqualified because he was not "neutral and detached," the recent opinion of *United States v Staggs*[1] is controlling. There it was held that a station judge advocate did not have the requisite impartiality, neutrality and detachment to permit his issuance of the authority to search. Among other things, it was shown that not only had he previously become suspicious of the accused and ordered an investigation into his activities, but also had assisted the agent who sought authority to search in preparing the requisite affidavit and participated in designing a plan to produce a probable cause situation that would support the authority to search. It was shown, too, that after accused's apprehension the same judge advocate was heard to say, "we'd been after him" for some time.

The same opinion, however, recognized that, standing alone and in the performance of official duties, the ordering of an investigation into suspected activity by an accused does not amount to participation in the process of investigation which would divest the authorizing officer of his lawful right to order a search upon probable cause. While emphasizing that the result was dictated by the peculiar facts found in *Staggs,* the Court added:[2]

We are well aware that a command-

---

[1] 23 USCMA 111, 48 CMR 672 (1974).

[2] *Id.* at 114, 48 CMR at 675.

er's responsibility for the maintenance of order and discipline in his command requires that he direct and sometimes participate in investigations into criminal activities. He is also the individual empowered to issue search authorizations on probable cause. Nothing in this decision is intended to invalidate this long-standing practice, as we are certain that, in the ordinary course of events, a commander is able to separate his responsibilities and maintain the requisite judicial attitude toward making determinations of the existence of probable cause.

■ Employing this standard as a template for the facts in the present case, we are of the view that Major Hoff, the commander who authorized the search, was not disqualified to do so. In his testimony, which covers the sole ground for urging that he was disqualified, Major Hoff indicated that during the 3-month period beginning in March 1973, when he assumed command, he received periodic briefings from Sergeant Mauriello, a security policeman on the air base, concerning the use of marihuana. This use, he said, instead of being only a problem "contained in the barracks or off base," became more and more open. As a result, he admitted that he and Sergeant Mauriello started compiling names and data concerning marihuana use. He said they also learned of the possibility that "hard drugs" were being used. His testimony about what he did and reasons for so acting is as follows:

> Finally the troops would start going to their supervisors and complaining that they could not go anywhere without being confronted with the use of marijuana. I felt it was time that we take action and call in the OSI. So, on the 18th of June, I called my OSI people at Pease Air Force Base, and they told me to prepare a case, find out who the users were and if I wanted their assistance they could come up within six hours notice. I called the Social Actions officer at ADC, my major command, he referred me to the Social Actions officer at Pease, my support base, and I kept hearing the same story, that we had to get names, we had to get an indication of who had

marijuana in their possession before the police would move. So, the whole thing came to a head. After I talked to the OSI on the 18th I called Sergeant Mauriello and told him what I had done, that I was getting concerned, that it was no longer a hidden problem, the use of marijuana was coming out, the troops felt that they could not go anywhere without being confronted with marijuana, or being implicated by someone else using marijuana. So, at that time, the 19th, he prepared a letter for my signature, to him, requesting that certain individuals be investigated, be subject to confidential investigation, and on this list Sergeant Guerette's name was placed. Prior to that, the 19th, we had a party, we had a squadron party at the NCO club, where there were some civilians that we felt brought marijuana into the NCO club, and they were in the company of Sergeant Guerette. So, I felt that it was time to move, as I say, I briefed Sergeant Mauriello, and he knew I was serious about having contacted the OSI. So, when he came to me the morning of the 21st stating that he had a confidential informant tell him about the marijuana in Sergeant Guerette's car, based on the experience I had working with Sergeant Mauriello for the past four months, I had a reasonable feeling that he had, in fact, found marijuana and I authorized a search, signed the search warrant.

From examining the foregoing, it is obvious that Major Hoff did not abandon his impartiality in considering the request for authority to search. Furthermore, his testimony supports no conclusion or even inference that he became personally involved as an active participant in gathering evidence against accused. Rather, it establishes that he was exercising his responsibilities as a commander and maintained the necessary posture to enable him to properly assess the existence of probable cause. Consequently, he was not disqualified but was, in fact, well within his rights in issuing the authority to search if there be probable cause—the next question to be decided.

■ On this point, it is appropriate

to recall certain applicable norms and principles. First, the right to be secure in one's person and property is protected against searches and seizures which are unreasonable. *United States v Unrue,* 22 USCMA 466, 47 CMR 556 (1973); *United States v Torres,* 22 USCMA 96, 46 CMR 96 (1973). Secondly, and putting aside any question of consent,[3] when evaluating the showing of probable cause to support a search which is authorized, such showing "must be tested and interpreted . . . in a common sense and realistic fashion." *United States v Ventresca,* 380 US 102, 108 (1965); *United States v Scarborough,* 23 USCMA 51, 48 CMR 522 (1974). Thirdly, an authorization to search must be justified by facts presented to the issuing officer that would lead a reasonable, prudent person to conclude that the matter for which the search is to be made constitutes evidence relevant to a crime, and that the matter is at the place to be searched. *United States v Hennig,* 22 USCMA 377, 379, 47 CMR 229, 231 (1973). Finally, when information which is the foundation for the exercise of the authority to search is supplied by an informant, circumstances must be laid out on the record tending to prove the reliability of the informant. *United States v Llano,* 23 USCMA 129, 130, 48 CMR 690, 691 (1974).

With these fundamentals in mind, the record must be examined to ascertain if the search in this case was within critical bounds. Both Sergeant Mauriello and Major Hoff testified that commencing in March 1973, the sergeant briefed the major once or twice a week about the marihuana situation on the base. Starting in June, these briefings became daily. On June 21, the sergeant said his informant told him he had been present on the scene when he saw accused place a bag of marihuana in the trunk of the car accused was using. The sergeant admitted the informant had told him the substance was in a bag but he knew it

was marihuana because he overheard accused identify it to some other people who were present.[4] In addition, the sergeant claimed the informer told him he saw accused place the marihuana in the car "last night."

Regarding the credibility of the informant, the sergeant said that after talking to him and receiving this latest information concerning accused, he went to where the informant had said that accused's car was parked. He confirmed its location and, in fact, passed on this bit of information to the major. The sergeant indicated that credence was fostered by three prior instances concerning marihuana and its use which had been reported by the informant and later mentioned in the briefings with the base commander. Two of the occasions were so-called "pot parties," one of which had taken place on base and the other in town. Other airmen and the local police corroborated that they occurred. The third incident was the finding of marihuana in or near a mess hall. The informant again gave useful information that was also confirmed by others.

In addition, Major Hoff was called as a witness and testified in a similar vein. Not only did he recount the reported facts surrounding accused placing marihuana in the trunk of the car, but he also outlined the three other instances which had originally been reported by the informer. Moreover, he indicated an awareness that these matters had been corroborated by others. Although unable to remember if the sergeant told him when his latest meeting with the informant had occurred, the major believed it was sometime between June 19 and 21 when he authorized the search. However, because of the foregoing and because he believed marihuana would be found in accused's car, Major Hoff testified he signed the authority to search it.

---

[3] During the hearing, the military judge ruled there was no consent to the search.

[4] The reported statement of accused about the contents of the bag when he placed it in the trunk was an admission clearly sufficient to justify a belief that marihuana was in the car. Permissibly, therefore, Sergeant Mauriello could report to Major Hoff that the informant saw the marihuana being placed in the car. Consequently, we are not concerned with a case of false or misrepresented information. *United States v Hennig, supra* at 380, 47 CMR at 232.

From a consideration of the foregoing, it is patent that the major had more than sufficient grounds to justify his granting the authority to search. Accused's act of placing marihuana in the trunk of the automobile was personally observed by the informant, "a substantial basis for crediting the hearsay." *United States v Harris,* 403 US 573, 581 (1971); *United States v Jones,* 362 US 257, 269 (1960). Moreover, trust in the informant was shown not to be misplaced. He had been confirmed by "other sources" on three occasions involving marihuana, and the sergeant confirmed that accused's car, reportedly containing the contraband, was where the informant had said it would be. This latter fact, even though innocuous, did enhance his credibility. *United States v Jones, supra* at 269–70. Therefore, the military judge properly overruled the defense objection and admitted as prosecution exhibits the marihuana and d-amphetamine which had been seized during the search.

The findings and sentence being legally sustained by competent evidence, the decision of the Court of Military Review is affirmed.

Judge QUINN concurs.

FERGUSON, Senior Judge (dissenting):

I dissent.

While I agree with that portion of the majority opinion which concludes that the commander who authorized this search was not disqualified from doing so under our decision in *United States v Staggs,* 23 USCMA 111, 48 CMR 672 (1974), I would hold that Major Hoff, whose duty it was to act as a neutral and detached magistrate, was not supplied with sufficient information to support the probable cause requirement for granting authorization to conduct that search. *United States v Houston,* 23 USCMA 200, 48 CMR 952 (1974).

In a case such as this, where probable cause is predicated upon information supplied by an unnamed or unidentified informant, certain well-established guidelines, which were first enunciated by the Supreme Court in *Aguilar v Texas,* 378 US 108 (1964), and later adopted into military law by this Court in *United States v Penman,* 16 USCMA 67, 36 CMR 223 (1966), must be followed for scrutinizing such information to determine whether probable cause indeed exists. This test, simply stated, requires that the information given must set forth facts tending to show that the unnamed informant is (1) competent to make the statements and (2) credible.[1] Envisioned as part and parcel of this two-pronged test is the further requirement that the commanding officer himself, as opposed to officials "'engaged in the often competitive enterprise of ferretting out crime,'" be supplied with sufficient underlying circumstances to enable him to make the independent and informed judgments required under *Aguilar. Spinelli v United States,* 393 US 410, 415 (1969); *United States v Houston, supra; United States v Llano,* 23 USCMA 129, 48 CMR 690 (1974).

In view of the fact that Major Hoff was made aware of the fact that the unnamed informant had supplied accurate information concerning marihuana and its use on three prior occasions, I have no difficulty in finding that the second prong of the *Aguilar* test, namely the informant's credibility, was here independently established. What particularly concerns me under the facts of this case, however, is the first prong of the *Aguilar* test which required Major Hoff to independently judge the validity of the informant's conclusion that the appellant possessed marihuana in the trunk of his car.

According to the trial testimony of Major Hoff, Sergeant Mauriello came to him on the morning of June 21, 1973, and informed him that a confidential informant had related seeing the appellant move a package of marihuana from the front portion of his vehicle to the trunk of the car. Although the informant had allegedly told Sergeant Mauriello that he believed the substance in the enclosed package was marihuana because he heard the accused identify it to some other unnamed and unidentified people who were allegedly present at the scene, Sergeant Mauriello apparently

---

[1] *See also* paragraph 52, Manual for Courts-Martial, United States, 1969 (Rev.).

never made this fact known to Major Hoff when requesting the authorization to search. The following questions, asked of Major Hoff on cross-examination, well illustrate the very limited nature of the underlying circumstances which Sergeant Mauriello provided and Major Hoff knew in this regard:

Q. Did Sergeant Mauriello, did he tell you who his informant was?
A. No, he did not.

Q. Did he tell you where the informant had been whenever he obtained this information that Sergeant Guerette had the marijuana?
A. I believe he stated that he, that the informant had observed this moving the contraband while his car was parked in the squadron parking area in front of the admin area.

Q. Did he tell you from where he had observed this?
A. No, he did not.

Q. Did he tell you what time of day or night it was?
A. No.

Q. Did he tell you how the informant knew that the bag contained marijuana?
A. No, he did not.

Q. So you were not aware, at that time, the informant had allegedly seen what he said he saw, is that correct?
A. Yes, that's correct.

Q. Do you know what day it was?
A. I do now, I didn't at the time.

Although Major Hoff, in later portions of his testimony, was able to narrow the time frame in which the confidential informant allegedly informed Sergeant Mauriello of his purported observations to sometime between June 19 and 21, the crucial fact remains that Major Hoff was never informed nor made aware of any of the underlying circumstances whereby the informant had concluded that contraband marihuana would be at the place to be searched.

The result reached by my brothers tends to overlook the significance attached to this first prong of the *Aguilar* test. Relying on the Supreme Court's decision in *United States v Harris,* 403 US 573 (1971), they apparently now take the position that since Major Hoff was merely advised that the informant *saw* the appellant move marihuana to the trunk of his car, he need not be advised of any of the underlying circumstances necessary to enable him to judge the validity of that bare conclusion. While the fact that Major Hoff was apparently made aware that the informant was purporting to speak from firsthand observation, a fact recognized by the Supreme Court in *Harris* as lending support for crediting such information, I do not believe that *Harris* stands for the proposition that a statement of firsthand observation alone is a substitute for evaluating the worth of an informant's statements. *United States v Acosta,* 501 F2d 1330 (5th Cir 1974). When a majority of the Supreme Court concluded in Harris that certain corroborative details might be substituted to establish the credibility of a confidential informant and the reliability of the information so supplied, they did not relax the standards for establishing the reliability determination. The factor of personal observation was there combined with three others, the cumulative effect of which a majority of the Supreme Court held adequate to establish the competency or reliability of the supplied information under the first prong of the *Aguilar* test. In this case, however, neither such a cumulative effect nor any independent evaluation of the underlying circumstances is present to support probable cause.

Notwithstanding that probable cause to search the appellant might otherwise have been established under the facts of this case had Major Hoff been sufficiently informed of the underlying circumstances so as to enable him to make an independent evaluation of the trustworthiness of the informant's observation, the conclusion is inescapable that he failed to fulfill the duty imposed upon him by law to personally evaluate the competency of the unnamed informant's statements before utilizing that information in a probable cause determination. *United States v Houston, supra; United States v Llano, supra; United States v Hennig,* 22 USCMA 377, 47 CMR 229 (1973) (Duncan, J., dissenting).

I would accordingly reverse the decision of the US Air Force Court of Military Review and order the findings of guilty and the sentence set aside and dismissed.