**Thomas WOODFIN**

v.

**E. L. PADERICK, Superintendent of the Virginia State Penitentiary.**

**Civ. A. No. 74–0118–R.**

United States District Court,
E. D. Virginia,
Richmond Division.

Feb. 18, 1975.

Gerald G. Poindexter, Petersburg, Va., for plaintiff.

Wilburn C. Dibling, Jr., Asst. Atty. Gen. of Va., Richmond, Va., for defendant.

## MEMORANDUM

MERHIGE, District Judge.

Thomas Woodfin, a Virginia prisoner incarcerated pursuant to a judgment entered by the Circuit Court of the City of Petersburg on January 30, 1973, upon a jury verdict adjudging him guilty of possession of a controlled drug, petitions the Court for a writ of habeas corpus, alleging that he is in custody in violation of the Constitution of the United States. Jurisdiction is attained by virtue of 28 U.S.C. § 2254.

The parties are presently before the Court on respondent's motion to dismiss. On September 19, 1974, the Court granted respondent's motion in part,

for failure to exhaust state judicial remedies with respect to petitioner's claim that Section 16.1–59, Code of Virginia (1950), pursuant to which a deputy clerk of the Municipal Court of the City of Petersburg issued a warrant to search petitioner's residence, is unconstitutional. At the same time the Court took under advisement respondent's motion with respect to petitioner's second claim, for which state remedies have been exhausted, that the affidavit which formed the basis for the issuance of the warrant was legally insufficient to establish probable cause for a search. At the Court's direction, the parties have filed memoranda of law on this sole remaining issue. Upon those memoranda, as well as the pleadings and exhibits before it, the Court deems this matter ripe for disposition.

The point of embarkation in considering petitioner's claim is, of course, the Fourth Amendment proscription that "[N]o Warrants shall issue, but upon probable cause, supported by Oath or Affirmation, and particularly describing the place to be searched, and the persons or things to be seized." While, in the final analysis, an extremely fact-specific approach must be taken each time a court is called upon to review the validity of a search warrant in terms of the adequacy of supporting affidavits, the Supreme Court of the United States has, over the past four decades, provided considerable guidance in this area of the law.

In Nathanson v. United States, 290 U.S. 41, 54 S.Ct. 11, 78 L.Ed. 159 (1933), for example, the Supreme Court announced what is today the most fundamental of all rules that:

Under the Fourth Amendment, an officer may not properly issue a warrant to search a private dwelling unless he can find probable cause therefor from facts or circumstances presented to him under oath or affirmation. Mere affirmance of belief or suspicion is not enough. 290 U.S. at 47, 54 S. Ct. at 13.

The Court further elaborated on this rule in Giordenello v. United States, 357 U.S. 480, 78 S.Ct. 1245, 2 L.Ed.2d 1503 (1958), wherein it announced the guiding principles to be:

. . . that the inferences from the facts which lead to the complaint "[must] be drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime." Johnson v. United States, 333 U.S. 10, 14, 68 S.Ct. 367, 369, 92 L.Ed. 436. The purpose of the complaint, then, is to enable the appropriate magistrate . . . to determine whether the "probable cause" required to support a warrant exists. The [magistrate] must judge for himself the persuasiveness of the facts relied on by a complaining officer to show probable cause. He should not accept without question the complainant's mere conclusion . . . . 357 U.S. at 486, 78 S.Ct. at 1250.

▇ In recent years, the Supreme Court has given close attention to requirements for obtaining a search warrant, particularly with regard to the showing constitutionally necessary to satisfy a magistrate that there is a substantial basis for crediting the report of an unidentified informant. Holding first in Jones v. United States, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960), that an affidavit may be based on such hearsay information and need not reflect the direct personal observations of the affiant, the Court went on in Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), to establish a two-pronged test, which is that the application for a search warrant must (1) give some of the underlying circumstances necessary for an impartial evaluation of the informant's tip, and (2) provide some of the underlying circumstances from which the affiant concluded that the informant was credible or his information reliable. More recently, in Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969), the Court, after restating the *Aguilar* crite-

ria, held that if an informant's tip is found inadequate under *Aguilar,* the other allegations in the affidavit which corroborate the information contained in the hearsay report should then be considered by the magistrate in determining the existence of probable cause.[1]

 In the instant matter, the affidavit upon which the warrant was issued consisted of a printed form containing, in addition to the printed matter, certain information furnished by the affiant. A verbatim copy of the language contained therein follows, with the information supplied by the affiant being underlined:

### AFFIDAVIT FOR SEARCH WARRANT

State of Virginia:

City of Petersburg, to-wit:

Before me, the undersigned, this day came Det. Sgt. E. D. Barbour who after being duly sworn, made oath that:

(1) He has reason to believe that on the premises known as 102 E. Fillmore Street, Apt. 1 and described further as a white two story frame multiple-occupancy structure in the City of Petersburg, there is now being concealed property namely Heroin, controlled drugs and drug paraphernalia as defined in the 1970 drug [sic] Control Act, Title 54 of the Code of Virginia as amended.

(2) He bases his belief that such property can be found on those premises on the following facts: For the pass [sic] two years, I have been conducting an investigation into the top heroin distributor's [sic] in the Tri-City Area. Since I started this investigation, I found that two men, Tommy Woodfin and Jimmy Starks are the top men and during this time I have arrest [sic] a number of men and woman [sic] that were dealer's [sic] for Woodfin and Starks. Some of them are Paul Miller, James Dillard, Jet Ingram, Steve Smith, Alonzo N. Crowell and Steve Mayfield, Moses McCray, Preston Parker, Barbara Ann Goodrich. Informants who gave information that led to the arrest of the above people stated that Woodfin was going to New York and bring heroin back to Petersburg. Once here they would cut in [sic], package in [sic] up and distribute it to the street dealers. On Oct. 16, 1972 at app. 11:00 PM I spoke with an informant who stated that Woodfin and Starks had just gotten a shipment of heroin in and that they were going to cut it at 102 E. Fillmore Street Apt. #1. After receiving this information, Det. Williams, Det. Gwathney, and myself went to this address. On driving pass [sic] this address, we saw Tommy Woodfin and Aubrey Lee Hartley entering the house. A few minutes later, Jimmy Starks went to the house and entered. Also during this time, a colored male and female drove up in an Oldsmobile and entered the house carrying a plastic bag. The informant who gave this information stated that they had seen the heroin in Jimmy Starks' possession earlier in the night and that Starks had approached them about dealing for him. Through my personal observation and my investigation

---

1. In United States v. Harris, 403 U.S. 573, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971), the most recent Supreme Court decision concerning the sufficiency of warrant applications, Chief Justice Burger's plurality opinion suggests a view more generous than that proposed in *Spinelli* as to the facts which may be considered to corroborate an otherwise inadequate hearsay report. At least one commentator has noted, however, that *Harris* is fundamentally a continuation, rather than a repudiation, of past Supreme Court analyses of probable cause showings of search warrants based on informer testimony. See Comment, The Undisclosed Informant and the Fourth Amendment: A Search for Meaningful Standards, 81 Yale L.J. 703 (1972).

for the past two years about Jimmy Starks and Tommy Woodfin and the information that I received from the informant, I feel that heroin is being cut and kept on the premises.

Due to the fact that the property to be searched for in this warrant is easily concealed and destroyed, it is felt immediate entry is necessary and due to concealment possibility and the fact that persons who frequent this address are known heroin distributors, all persons found on the premises should be searched.

(3a) He has personal knowledge of the facts set forth in paragraph (2). and

(3b) He was advised of the facts set forth in paragraph (2) by an informer. This informer's credibility or the reliability of the information may be adjudged by the following facts: The informant gave information that led to the arrest of Betty McNeil, James (Slim) Dillard, Ernest and Diann Cross.

(4a) The offense in relation to which the search is to be made is: Possession of Heroin with intent to distribute

(4b) The grounds for search and seizure are established by the following facts:

The items to be searched for under this warrant (Heroin) are Contraband and thier [sic] possession is contrary to law. From my investigation and information that I have received, I believe that heroin is being cut on the premises of 102 E. Fillmore St. Apt. 1.

(5a) He has personal knowledge of the facts set forth in paragraph (4).

(5b) He was advised of the facts set forth in paragraph (4) by an informer. This informer's credibility or the reliability may be adjudged by the following facts:

The informant gave information that led to the arrest of the above people for narcotic violation.

/s/ E D Barbour Sgt.

Signature of Affiant and Official Title, if any

Subscribed and sworn to before me on October 17, 1972

2:35 A.M. 10–17–72

/s/ Paul V. Imboden Dep. Clerk

(Signature and Title) Municipal Court

In challenging the constitutional sufficiency of this affidavit in terms of the *Aguilar* criteria, petitioner first asserts that the affidavit does not contain nor does it describe sufficient underlying circumstances and facts from which the magistrate (or deputy clerk in this case) could determine that the narcotics were where the affiant claimed they were. More specifically, petitioner argues that affiant's statement that petitioner and Starks are "top men" in the local heroin trade is a bare conclusion. He further asserts that the trip to New York, referred to in the affidavit, was but an innocent activity, and absent underlying circumstances from which the magistrate could determine what facts led the informant to conclude that the trips were being made to obtain heroin, such information cannot corroborate the conclusion previously presented by the affiant. Petitioner also argues that the magistrate was precluded from weighing the persuasiveness of the facts relied upon in the affiant's statement that the informant had seen Starks in possession of the heroin earlier in the night in that the affiant neither stated where the informant had seen Starks nor asserted that there was information which led either the informant or the affiant to conclude that the heroin would be "cut" at the Fillmore Street address. Petitioner further asserts that while the location referred to in the affidavit is Apartment No. 1 at 102 E. Fillmore Street, the affiant only stated that he and other

officers drove by the "address" and saw Starks enter "the house" and that this information was insufficient to corroborate the reference made to the particular apartment in question.

Petitioner also contends that the affidavit fails to meet the second prong of the *Aguilar* test in that the affiant refers to several "informants" throughout the affidavit, yet it is allegedly unclear from the face of the document as to which "informant" the allegations of reliability in either paragraph 3(b) or 5(b) are directed. In support of this contention, petitioner refers to a portion of the testimony of the affiant during the hearing on petitioner's motion to suppress in which the affiant states that, while the allegations of reliability in paragraph 3(b) refer to the same informant who had seen Starks in possession of the heroin, this was not spelled out in the affidavit. Further, petitioner suggests that the affiant's personal observations while driving past the searched apartment building do not, standing alone, tend to corroborate the informants' tips.

Applying the principles set forth by the Supreme Court as heretofore cited, as well as reading the affidavit in a "commonsense and realistic fashion," United States v. Ventresca, 380 U.S. 102, 108, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965), the Court finds that the affidavit does, as a matter of law, set down sufficient data to permit a magistrate to conclude the existence of probable cause for a search. For, regardless of the conclusory nature of many of the statements made by the affiant, the law is unmistakably clear that an allegation of personal observation of criminal activity suffices to show that an informant has based his particular conclusions on reliable data. See United States v. Harris, *supra*, 403 U.S. 573, 579, 91 S.Ct. 2075, 29 L.Ed.2d 723 (Burger, C. J.) and 589, 91 S.Ct. 2075 (Harlan, J., dissenting); Spinelli v. United States, *supra*, 393 U.S. 410, 425, 89 S.Ct. 584, 21 L.Ed.2d 637 (White, J., concurring). Such is certainly present in the affidavit under review which contains the statement: "The informant who gave this information stated that they had seen the heroin in Jimmy Starks possession earlier in the night and that Starks had approached them about dealing for him." Moreover, contrary to petitioner's contention, the Court finds the fact that the affiant did not state where his informant had seen Starks earlier in the night is of little consequence, since "technical requirements of elaborate specificity . . . have no place in this area." United States v. Ventresca, *supra*, 380 U.S. at 108, 85 S.Ct. at 746.

In terms of the question of the credibility or reliability of the informant who provided these observations to the affiant, the Court is not persuaded that this warrant must fail on the basis of grammatical inconsistencies. It is apparent, as the petitioner suggests, that several informants were involved in the affiant's investigation. In fact, the plural "informants" is used to describe those persons who had given information which led to the arrest of nine individuals identified as dealers for petitioner and Starks and who had provided the affiant on this occasion with information concerning petitioner's alleged trip to New York. The singular "informant" is used, however, in reference to the personal observations of Starks' possession of heroin and in the recounting of prior arrests in paragraphs (3b) and (5b) of the affidavit. Mindful of the Supreme Court's admonition that affidavits "are normally drafted by nonlawyers in the midst and haste of a criminal investigation", United States v. Ventresca, *supra*, 380 U.S. at 108, 85 S.Ct. at 746, the Court is led to the conclusion that the affidavit in question provided sufficient underlying circumstances for the magistrate to determine that "the 'informant' was 'credible' or his information 'reliable'." Aguilar v. Texas, *supra*, 378 U.S. at 114, 84 S.Ct. 1509.

Accordingly, the petitioner's application for a writ of habeas corpus will be denied. An appropriate order will issue.