UNITED STATES of America,
Plaintiff-Appellee,

v.

Vincent Moran DOSS,
Defendant-Appellant.

No. 75–1462.

United States Court of Appeals,
Sixth Circuit.

Argued Feb. 5, 1976.

Decided April 5, 1976.

Robert W. Andrews, Erich W. Merrill, Memphis, Tenn., for defendant-appellant.

Thomas F. Turley, U. S. Atty., W. Hickman Ewing, Jr., Asst. U. S. Atty., Memphis, Tenn., for plaintiff-appellee.

Before EDWARDS, McCREE and MILLER, Circuit Judges.

PER CURIAM.

The defendant and two others were indicted and convicted for transporting stolen goods (a quantity of women's clothing) in interstate commerce. After his conviction of the charge in the district court, the defendant Doss was sentenced to a period of five years' imprisonment to run concurrently with a previous five-year sentence in another case.

On his appeal from the judgment of conviction the defendant insists (1) that the district court erred in overruling his motion to suppress evidence; (2) in admitting in evidence the contents of tape recordings of defendant's telephone conversations with a government informer; and (3) in allowing the jury to inspect certain exhibits during recesses and before all of the evidence had been introduced.

Proof was introduced at the trial that a clothing store in Memphis had been robbed on November 6, 1972, of practically all of a $9,000.00 inventory of women's clothing. There was also evidence that on the morning of November 7, 1972, police officers of the Cairo, Illinois, police department were investigating a large gun store robbery which had occurred on the previous evening at East Cape, Illinois, approximately 30 miles north of Cairo. While so engaged they observed a 2-door 1966 Chrysler, green in color, and bearing Tennessee license

plates, parked in front of a warehouse owned by the defendant Doss in Cairo, Illinois. The police according to the evidence, observed one Jerry McCulley in the vicinity of the car apparently engaged in unloading some objects, which they could not identify, from the car and moving back and forth between the car and the warehouse. At that time the Cairo officers were not aware of the clothing store burglary in Memphis. Their suspicions having been aroused, they continued to observe the warehouse. They saw that McCulley backed the vehicle from the warehouse and parked it on a side street. They then saw one Travis Floyd leave the warehouse through a side door which he closed behind him. The defendant Doss then left the warehouse from the front entrance. Although the officers at the time of the surveillance were not acquainted with Floyd or McCulley, they did know the defendant Doss and they saw that he walked to the area where the car was parked, that he spoke with McCulley and Floyd, and that he then got in his own car and drove back to his office. McCulley and Floyd then proceeded from the warehouse to the Hub lounge approximately one block away. Within a short time Doss was seen leaving his office and going to the Hub lounge. After Doss left the lounge, McCulley also left. He proceeded to the vehicle, opened up the passenger's side, and removed some object from the car. He then went to the front of the vehicle, opened the hood, and pitched some object toward the lounge. In the same movement he threw an object or objects underneath the car. Having determined by this time that the car was registered to McCulley as a 1966 Oldsmobile instead of a 1966 Chrysler, the officers approached McCulley to question him about the license plates. At this time they saw that two crowbars were under the front of the vehicle. It was observed that gray paint fragments appeared on the crowbars which proved later to be similar to the gray color on the door where the robbery had occurred at East Cape. One of the officers advised McCulley of his rights and questioned him about whether he had been arrested for a felony, and in particular

a burglary or larceny. McCulley was then placed under arrest, and later other officers placed Floyd under arrest while he was still inside the lounge. The two men were charged with possession of burglary tools, (apparently the crowbars underneath the car) a violation of Illinois state law. After the arrests, McCulley gave consent to the officers to search his automobile. The search revealed three pairs of jersey gloves, a pair of pliers and some chisels. The back seat of the car had been removed and there were a number of items on the back floor along with some broken coat hangers. A blanket and a broken clothes hanger were found in the trunk of the car.

The officers then obtained from a local judge a search warrant for the Doss warehouse, the object of the search being the firearms that had been taken in the East Cape burglary on the previous evening. The complaint for the first search warrant is set forth in the appendix hereto. In searching the warehouse, pursuant to the warrant, no guns or firearms were found, but one of the officers found in a cardboard juke box packing crate a large quantity of women's clothing which appeared to be wet. After the discovery of the clothing, the officers advised the defendant Doss of his rights and questioned him as to how the clothes had been obtained. Doss' reply was that he had purchased the clothing approximately two weeks previously from a Mr. Williams from Blytheville, Arkansas, and that he had a cancelled check for the clothes. At this point the officers still did not know about the burglary of the clothes in Memphis, but they were advised of the Memphis robbery a short time later by the Memphis police department. The officers then obtained a second search warrant from the same local judge who had issued the first one. The second warrant was for a search of the warehouse for the ladies' clothing which they had observed. Pursuant to the warrant, the officers seized some 477 items of women's clothing, which were duly inventoried. The clothing was later identified by the owner of the Memphis store as the items which had been taken in the Memphis robbery.

Defendant Doss filed a motion to suppress the evidence, consisting of the wearing apparel and all other items obtained by the search of the Doss warehouse. It was contended, and the appellant now contends on appeal, that the first search warrant used by the officers was issued without probable cause for the search of the warehouse for firearms and consequently that the seizure of the wearing apparel discovered during the unlawful search was illegal. It is further contended that the second search warrant for the clothing was invalid since it was issued for items discovered during the initial unlawful search, and further that if the first search was lawful, there was no probable cause to issue the second one.[1]

The district court conducted pretrial hearings on the various motions to suppress. The motions were overruled, and the items of clothing obtained as a result of the searches were admitted in evidence at trial against the defendant.

■ Construing the complaint on the basis of which the first search warrant was issued, we are of the opinion that it sets forth sufficient facts to justify the local judge in finding the existence of probable cause and in issuing the search warrant accordingly. The complaint shows the following facts:

(1) That a felony had been committed in the evening of November 6, 1972, as a result of a burglary and theft of firearms from the property of one James Wilson d/b/a Homestead, located at East Cape Girardeau, Illinois. (The Judge could take judicial notice that East Cape Girardeau, Illinois, and Cairo, Illinois, were rural communities);

(2) That Jerry D. McCulley and Travis Floyd were observed by Cairo police in the course of their investigation of the theft the next morning (November 7, 1972) unloading certain chattel property from an automobile into the warehouse located at 1201 Commercial Avenue, Cairo, Illinois, a warehouse believed to be rented to Vincent Doss;

(3) That when officers approached the scene of the unloading of the property the said Jerry D. McCulley and Travis Floyd sought to dispose of the "tools" which the affiant believed were used in the burglary and theft of said Homestead; and

(4) That upon examination it was found that the "tools" consisted of crowbars which had been thrown underneath the automobile and were found to have thereon gray paint which corresponded with the paint on the door of the building which had been burglarized in East Cape.

The complaint proceeds to state on the basis of this information that the affiant believed that there was located in the warehouse building at 1201 Commercial Avenue, Cairo, Illinois, a number of firearms which had been stolen from the Homestead, a list of the firearms being attached to the complaint.

Although it is true that the information supplied by the complaint could possibly have been more specific and more detailed, we find that the information supplied to the issuing officer was clearly adequate, under principles enunciated by the Supreme Court, to justify the officer in issuing the search warrant for the firearms.

In *Jaben v. United States*, 381 U.S. 214, 85 S.Ct. 1365, 14 L.Ed.2d 345 (1965), it was stated that it is not required that each factual allegation which the affiant puts forth in a complaint for a search warrant must be "independently documented," or that "each and every fact which contributed to his conclusions be spelled out in the complaint." In the same case the Supreme Court stated that it was sufficient "that enough information be presented to the commissioner to enable him to make the judgment that the charges are not capricious and are sufficiently supported to justify the bringing into play the further steps of the criminal process."

1. The legal sufficiency of the second search warrant is not questioned if the first search warrant was validly issued on probable cause.

In *United States v. Ventresca*, 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965), the Court emphasized that the term probable cause " 'means less than evidence which would justify condemnation' . . . and that a finding of 'probable cause' may rest upon evidence which is not legally competent in a criminal trial." The Court further admonished in *Ventresca* that when a magistrate has found probable cause "the courts should not invalidate the warrant by interpreting the affidavit in a hyptertechnical, rather than a commonsense manner." It was further stated that while in a particular case it may not be easy to determine when an affidavit demonstrates the existence of probable cause, "the resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants," citing *Jones v. United States*, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960). Referring to its previous holdings in this area, the Court continued:

These decisions reflect the recognition that the Fourth Amendment's commands, like all constitutional requirements, are practical and not abstract. If the teachings of the Court's cases are to be followed and the constitutional policy served, affidavits for search warrants, such as the one involved here, must be tested and interpreted by magistrates and courts in a commonsense and realistic fashion. They are normally drafted by nonlawyers in the midst and haste of a criminal investigation. Technical requirements of elaborate specificity once exacted under common law pleadings have no proper place in this area. A grudging or negative attitude by reviewing courts toward warrants will tend to discourage police officers from submitting their evidence to a judicial officer before acting.

As the Court pointedly stated in *Spinelli v. United States*, 393 U.S. 410, 419, 89 S.Ct. 584, 590, 21 L.Ed.2d 637, 645 (1969), ". . . only the probability, and not a prima facie showing, of criminal activity is the standard of probable cause." These principles were reaffirmed in the more recent case of *U. S. v. Harris*, 403 U.S. 573, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971).

Moreover, our Court has adhered to the principle in numerous cases that once a magistrate has found that probable cause exists on the basis of the information supplied by the affidavit, his judgment should not be overturned unless it is arbitrarily exercised. *Evans v. United States*, 242 F.2d 534 (6th Cir.), *cert. denied*, 353 U.S. 976, 77 S.Ct. 1059, 1 L.Ed.2d 1137 (1957).

Testing the complaint or affidavit for the first search warrant on the basis of these established principles, it is clear to us that the validity of the first search warrant is not open to serious question.

Although the officers would probably have been justified in seizing the clothes which were in plain view at the time they were executing the first warrant (see *Coolidge v. New Hampshire*, 403 U.S. 443, 465–66, 91 S.Ct. 2022, 2037–38, 29 L.Ed.2d 564, 582–83 (1971)), they did not do so, but instead elected to go before the same local judge to obtain another warrant specifically for the items of clothing. The fact that these items were packed haphazardly in a box, that the clothing was wet, and that many of the items bore price tags, made it immediately apparent that the property was probably evidence of a crime. In any event, the second search warrant for the clothing was manifestly supported by a proper affidavit showing probable cause for the search and seizure.

We therefore find and hold that both search warrants were validly issued on probable cause and that the search of the warehouse and the seizure of the items of evidence are not subject to challenge.

We have considered other questions raised by the defendant Doss on appeal and we find them to be without merit.

The judgment of conviction against the defendant Doss is therefore

AFFIRMED.

342

72-C F- 67

STATE OF ILLINOIS

IN THE CIRCUIT COURT OF THE ___FIRST___ JUDICIAL CIRCUIT

___ALEXANDER___ COUNTY

## COMPLAINT FOR SEARCH WARRANT

_William C. Bowers_ _____complainant now appears before the undersigned

Judge of the Circuit Court of said County and requests the issuance of a search warrant to search (the

McCulley

person of _Vincent Doss, Travis Floyd , Jerry_ and) _1201 Commercial Avenue Cairo, Illinois_
(premises)

and seize the following instruments, articles and things which have been used in the commission of, or

which constitute evidence of, the offense of _Burglary and Theft of Firearms_ the property of _____

_James Wilson d/b/a Homestead, located at East Cape Girardeau, Illinois,_ _____

_____

_____

_____

Complainant say_ that he has probable cause to believe, based upon the following facts, that the above

listed things to be seized are now located upon the (person and) premises set forth above:

This affiant saw Jerry D. McCulley and Travis Floyd unloading certain chattel property from

an auto into the warehouse located at 1201 Commercial Avenue Cairo, Illinois, which this

affiant believes is leased to Vincent Doss. Upon approaching the scene of unloading of the

property the said Jerry D. McCulley and Travis Floyd did seek to dispose of the tools which

this affiant believes were used in the burglary and theft of said Homestead, and upon

examination of said tools which were thrown under the auto, said tools were found to have

thereon grey paint which corresponds to the paint on the door of the building that was

burglarized, namely the Homestead, and, this affiant believes that there is located in said

building located at 1201 Commercial Cairo, Illinois a number of firearms which had been stolen

from Homestead, a list of siad firearms are attached hereto and by reference made a part of

this complaint.

_____

_____

_William C. Bowers_
Complainant

FILED
NOV 8 1972
James Kaufman
CIRCUIT CLERK

Signed and sworn to before me on-

___November 7___, 19_72_

M. T. O'Shea
Judge

McCREE, Circuit Judge (dissenting).

I respectfully dissent. I would hold that the affidavit presented to the magistrate who issued the first warrant to search the warehouse did not establish probable cause to believe the essential fact, viz, that the things to be seized, the guns stolen from a store located thirty miles from Cairo, were present in the warehouse, the place to be searched.

The affidavit showed only that some suspicious persons who behaved in a furtive manner unloaded some unidentified objects from a passenger vehicle into the warehouse. The affidavit stated that the persons under surveillance threw some objects under the car. The objects were retrieved and were found to be two crowbars to which adhered gray paint fragments similar to the color of the paint on the door of the building where the robbery had occurred thirty miles away in East Cape, Illinois.

The occupants of the car were arrested, and a search of the car revealed gloves, a pair of pliers, some chisels, and some broken clothes hangers. However, the results of this search may not be considered in determining whether there was probable cause for the issuance of the warrant because they were not communicated to the magistrate. *Aguilar v. Texas,* 378 U.S. 108, 109 n.1, 84 S.Ct. 1509, 1511, 12 L.Ed.2d 723, 725 (1964). Nor was the magistrate informed that the officers' suspicions were originally aroused when they learned that the license plates were issued for a 1966 Chrysler, not a 1966 Oldsmobile automobile.

The information presented to the magistrate may have established probable cause to arrest the occupants of the car for possession of burglary tools, but it did not afford probable cause to believe that property obtained in the gun theft in East Cape was in the Cairo warehouse. The objects that were unloaded into the warehouse were not described as guns, boxes, bags, or in any other manner except as "chattel property," and the magistrate was uninformed about what kinds of containers, if any, were obtained in the gun theft. The only nexus communicated to the magistrate between the robbery in East Cape and the persons arrested in Cairo was the gray paint observed on the crowbars. Gray paint is a common commodity, and no chemical matching was performed to determine whether the paint on the crowbars matched the paint on the door of the gun store. The affidavit stated only that the paint was similar in color.

I would conclude that the affidavit did not afford probable cause to believe that guns stolen in East Cape were in the warehouse in Cairo, the place to be searched. Since the entry into the warehouse was unlawful, then the discovery of the clothes stolen from Memphis was a consequence of an illegal intrusion, and the motion to suppress should have been granted.